J-E01002-15

2015 PA Super 248

| | |
|---|---|
| PATRICK J. MACPHERSON, EXECUTOR OF THE ESTATE OF RICHARD MACPHERSON, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| THE MAGEE MEMORIAL HOSPITAL FOR CONVALESCENCE D/B/A MAGEE REHABILITATION HOSPITAL, JEFFERSON HEALTH SYSTEM, INC., TJUH SYSTEM, MANOR CARE OF YEADON PA, LLC, D/B/A MANORCARE HEALTH SERVICES-YEADON, HCR MANOR CARE, INC., MANORCARE, INC., HCR HEALTHCARE, LLC, HCR II HEALTHCARE, LLC, HCR III HEALTHCARE, LLC | |
| APPEAL OF: MANOR CARE OF YEADON PA, LLC, D/B/A MANORCARE HEALTH SERVICES-YEADON, HCR MANOR CARE, INC., MANORCARE, INC., HCR HEALTHCARE, LLC, HCR II HEALTHCARE, LLC, HCR III HEALTHCARE, LLC, | |
| Appellants | No. 80 EDA 2013 |

Appeal from the Order Entered November 20, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 191 Oct. Term 2011

BEFORE:  BOWES, DONOHUE, SHOGAN, LAZARUS, MUNDY, OLSON, WECHT,
         STABILE, and JENKINS, JJ.

J-E01002-15

OPINION BY SHOGAN, J.:                          **FILED NOVEMBER 25, 2015**

Appellants, Manor Care of Yeadon PA, LLC, d/b/a ManorCare Health Services-Yeadon, *et al.* ("Manor Care"), appeal from the trial court's order overruling their preliminary objections to the trial court's jurisdiction and venue in this action filed by Appellee, Patrick J. MacPherson ("MacPherson"), as executor of the estate of his brother, Richard MacPherson ("Decedent"). The preliminary objections were based on the existence of an arbitration agreement between Manor Care and Decedent. Following our careful review of the record, and in consideration of the applicable law and arguments of the parties, we reverse and remand this case for referral to arbitration.

On August 20, 2009, Decedent, who was fifty-four years old and had no history of dementia or mental illness, was admitted to Magee Rehabilitation Hospital ("Magee").[1] On September 15, 2009, Decedent was admitted to Manor Care, a nursing home facility.[2] Decedent was transferred to Mercy Fitzgerald Hospital on September 19, 2009, and readmitted to Manor Care on September 24, 2009. On October 6, 2009, Decedent and a

---

[1] The Magee Memorial Hospital for Convalescence d/b/a Magee Rehabilitation Hospital, Jefferson Health System, Inc., and TJUH System ("Hospital Defendants") are engaged in the ownership and operation of hospital facilities, which include Magee. On April 18, 2012, the Honorable Sandra M. Moss approved the stipulation to dismiss Defendant TJUH System but allowed for the potential reinstatement of that defendant pursuant to Pa.R.C.P. 1036.1. Docket Entry 31.

[2] Appellants own and operate nursing home facilities, which include Manor Care.

- 2 -

Manor Care representative executed an arbitration agreement ("Agreement"), which provided that any dispute between the parties would be submitted to binding arbitration. Decedent resided at Manor Care until his death on February 1, 2010. On January 27, 2012, MacPherson filed a complaint advancing claims of negligence, negligence *per se*, corporate negligence, wrongful death, and survivorship in connection with Decedent's stays at Magee and Manor Care. On March 30, 2012, Manor Care filed preliminary objections seeking transfer of the case to arbitration pursuant to the Agreement. Following discovery and briefing by the parties, the trial court entered an order on November 20, 2012, overruling Manor Care's preliminary objections. This timely appeal followed.[3]

A panel of this Court, with one judge dissenting, filed an opinion reversing and remanding this case for referral to arbitration. ***MacPherson v. The Magee Memorial Hospital for Convalescence***, 2014 PA Super 143 (Pa. Super filed July 10, 2014). Thereafter, MacPherson filed a motion for reargument *en banc*. We granted the motion and heard oral arguments on March 24, 2015. This matter is now ripe for disposition.

---

[3] The trial court did not order Manor Care to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. On February 6, 2013, in compliance with Pa.R.A.P. 1925(a)(1), the trial court filed an order relying upon its prior order and opinion dated November 20, 2012, for its reasons overruling the preliminary objections.

Manor Care raises four issues on appeal, all of which challenge the trial court's refusal to transfer this matter to arbitration,[4] as follows:

I. Whether the Trial Court erred in overruling [Manor Care's] Preliminary Objections seeking to compel arbitration without applying or acknowledging the liberal standards favoring arbitration of disputes contained in the Federal Arbitration Act ("FAA") or Pennsylvania law?

II. Whether the Trial Court erred in finding that the Decedent, Richard MacPherson, lacked capacity to execute the Arbitration Agreement?

III. Whether the Trial Court erred in finding that the Arbitration Agreement at issue in this case was unenforceable due to both procedural and substantive unconscionability?

IV. Whether the Trial Court erred in finding that the Arbitration Agreement was unenforceable due to the failure of a term in the agreement designating the National Arbitration Forum ("NAF") to administrate the arbitration?

Manor Care's Brief at 5.

The Agreement at issue provides as follows:

**VOLUNTARY AGREEMENT: If you do not accept this Agreement, the Patient will still be allowed to live in, and receive services in, this Center.**

**ARBITRATION AGREEMENT ("AGREEMENT")**

---

[4] An order refusing to compel a case to arbitration is a threshold, jurisdictional question, **Gaffer Insurance Company, Ltd. v. Discover Reinsurance Company**, 936 A.2d 1109 (Pa. Super. 2007), that is appealable as an exception to the general rule that an order overruling preliminary objections is interlocutory and not appealable as of right. **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 654 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, **Extendicare Homes, Inc. v. Pisano**, 134 S.Ct. 2890 (2014); **see also** 42 Pa.C.S. § 7320(a)(1) (appeal may be taken, *inter alia*, from an order denying an application to compel arbitration).

**BY ACCEPTING THIS AGREEMENT, THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE AND/OR A JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ THIS AGREEMENT CAREFULLY AND IN ITS ENTIRETY BEFORE ACCEPTING ITS TERMS.**

This Agreement made on _____ (date) by and between the Parties, Patient Richard MacPherson [handwritten] and/or Patient's Legal Representative _____ (collectively referred to as "Patient"), and the Center Manor Care Yeadon [handwritten], is an Agreement intended to require that **Disputes** be resolved by arbitration. The Patient's Legal Representative agrees that he is signing this Agreement as a Party, both in his representative and individual capacity.

**A.      What is Arbitration?**:  Arbitration is a cost effective and time saving method of resolving disputes without involving the courts.  In using arbitration, the disputes are heard and decided by a private individual called an arbitrator.  The dispute will not be heard or decided by a judge or jury.

**B.      AGREEMENT TO ARBITRATE "DISPUTES":** Any and all claims or controversies arising out of or *in any way* relating to this Agreement, the Admission Agreement or any of the Patient's stays at this Center, or any Center operated by any subsidiary of HCR-Manor Care, Inc., whether or not related to medical malpractice, including but not limited to disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, preemption, waiver, or any other defense to enforceability  of this Agreement or the Admission Agreement, whether arising out of State or Federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation except as indicated, any claim based on Patients' Rights or a claim for unpaid Center charges), regardless of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration.  Notwithstanding the above, nothing in this Agreement prevents the Patient from filing a grievance or complaint with the Center or appropriate governmental agency; from requesting an inspection of the Center from such agency; or from seeking review under any

applicable federal, state or local law of any decision to involuntarily discharge or transfer the Patient from the Center.

**1.     Administrator:**  The arbitration shall be administered by National Arbitration Forum ("NAF"), 6465 Wayzata Blvd., Suite 500, Minneapolis, MN 55426; www.arbitration-forum.com (hereinafter "Administrator").  If the Parties mutually agree in writing not to select NAF or if the NAF is unwilling or unable to serve as the Administrator, the Parties shall agree upon another independent entity to serve as the Administrator, unless the Parties mutually agree to not have an Administrator.

**2.     Demand for Arbitration** shall be made in writing, sent to the other Party via certified mail, return receipt requested, and filed with the NAF (unless NAF is mutually waived).

**3.     Arbitration Panel:**  The arbitration shall be conducted by three (3) Arbitrators (the "Panel").  Each Party will select one Arbitrator.   The two selected Arbitrators will select a third Arbitrator.  Each Arbitrator must be a retired State or Federal Court Judge or a Member of the State Bar where the Center is located with at least 10 years of experience as an attorney.  NAF approved Arbitrators do not have to be used.   If one Party refuses to select its arbitrator within 30 days of a written request for same, then the Administrator shall select that Party's Arbitrator.

**4.     Sole Decision Maker:**     The Arbitration Panel is empowered with the sole jurisdiction to, and shall, resolve **all** disputes, including without limitation, any disputes about the making, validity, enforceability, scope, interpretation, voidability, unconscionability, preemption, severability and/or waiver of this Agreement or the Admission Agreement, as well as resolve the Parties' underlying disputes, as it is the Parties' intent to completely avoid involving the court system.  The Panel shall <u>not</u> have jurisdiction to certify any person as a representative of a class of persons and, by doing so, adjudicate claims of persons not directly taking part in Arbitration.

**5.     Procedural Rules and Substantive Law:**  The Panel shall apply the Federal Rules of Evidence and Federal Rules of Civil Procedure except where otherwise stated in this Agreement.  Also, the Panel shall apply, and the arbitration award shall be consistent with, the State substantive law (including any and all statutory damage caps) for the State in which the Center is

located, except as otherwise stated in this Agreement or where preempted by the FAA. The Panel shall apply NAF's Code of Procedure (in effect as of May 1, 2006) unless otherwise stated in this Agreement. NAF's Code of Procedure may be obtained from NAF, (877) 655-7755, www.arbitration-forum.com. The Parties hereby opt-out of NAF Rules (45 regarding indigents; 43 regarding appeals and judicial review).

**6. Refusal to Arbitrate:** Any Party who refuses to go forward with arbitration acknowledges that the Panel will go forward with the arbitration hearing and render a binding award without the participation of such Party or despite his absence at the hearing.

**7. Waiver of Claim:** Any claim shall be forever waived if it arose prior to the arbitration hearing and is not presented in such hearing. A claim that is not served within the statute of limitations period applicable to the same claim in a court of law in the state in which this Center is located shall be forever waived.

**8. Award.** The Panel's award must be unanimous and shall be served no later than five (5) working days after the arbitration hearing. The award must state in detail the Panels' findings of fact and conclusions of law, shall be marked "confidential", and must be signed by all three Arbitrators. If any damages are awarded, the award must delineate specific amounts for economic and/or non-economic damages.

**9. Final with Limited Rights to Review (Appeal):** The Panel's award binds the Parties. The Parties have a limited right of review for only the express reasons allowed by the FAA.

[No section C. in original]

**D. DISCOVERY:** Discovery shall be governed by NAF's Code of Procedure. However, discovery shall be limited as follows: **(1)** Within 30 days after service of the Demand, each Party must comply with Fed. R. Civ. P., Rule 26(a)(1) and thereafter must comply with Rule 26(e) regarding supplementation of disclosures and responses. **(2)** A Party may serve a maximum of 30 written questions (interrogatories), 30 requests to produce documents and 30 requests for admissions; inclusive of subparts. **(3)** The following disclosures shall be served no later than one hundred fifty (150) days before the arbitration hearing by the Claimant,

and one hundred twenty (120) days before the arbitration hearing by the Respondent: (a) list of witnesses to be called at the Hearing (full name, title, address and phone number if known) and an outline of each witnesses' [sic] intended testimony; (b) list of documents to be relied upon at Hearing; except documents to be used solely for impeachment purposes; (c) any sworn recorded statements to be relied upon at Hearing including the full name, title, address and phone number of the person who gave the statement. The Parties shall supplement these disclosures per Fed. R. Civ. Pr., Rule 26 (e). **(4)** Each Party may have up to three (3) experts and no more than ten (10) lay witnesses for its witness list, as well as for the Hearing. Depositions of witnesses shall be limited to those people listed on the Parties' witness lists or in the Parties' Rule 26 disclosures or discovery responses but under no circumstances will a Party be allowed to take more than 13 depositions. A written report summarizing each expert's opinions and the basis for each opinion, and a list of all records contained in the expert's file, must be served at least thirty (30) days before the expert's deposition; **(5)** Discovery shall be completed 45 days before the Hearing and the Hearing shall begin no later than 365 days after Demand for Arbitration is served, shall last in duration no longer than five (5) working days, and the hearing time allowed shall be split on a pro rata basis subject to the Panel's discretion. **(6)** The Parties may agree to modify these discovery terms or deadlines.

**E.** **RIGHT TO CHANGE YOUR MIND:** This Agreement may be cancelled by written notice sent by certified mail to the Center's Administrator within thirty (30) calendar days of the Patient's date of admission. If alleged acts underlying the dispute occur before the cancellation date, this Agreement shall be binding with respect to those alleged acts. If not cancelled, this Agreement shall be binding on the Patient for this and all of the Patient's other admissions to the Center without any need for further renewal.

**F.** **OTHER PROVISIONS:**

**1.** **No Caps/Limits on Damages:** There are no caps/limits on the amount of damages the Panel can award other than those already imposed by law in the state in which this Center is located. All state laws, statutes and regulations that limit awardable damages and define the scope of admissible and

inadmissible evidence (i.e. regulatory surveys, incident reports, etc.) expressly apply to any arbitration hearing held pursuant to this Agreement.

**2.     Opportunity to Review & Right to Consult with Attorney:**  The patient (if competent) and the Patient's Legal Representative acknowledge that the Patient and Legal Representative have each received a copy of this Agreement, and have had an opportunity to read it (or have it read to him/her) and ask questions about it before accepting it.  Please read this Agreement very carefully and ask any questions that you have before signing it.  Feel free to consult with an attorney of your choice before signing this Agreement.

**3.     Benefits of Arbitration:**  The Parties' decision to select Arbitration is supported by the potential cost-effectiveness and time-savings offered by selecting arbitration, which seeks to avoid the expense and delay in the court system.  The Parties recognize that often the Patient is elderly and may have a limited life-expectancy, and therefore selecting a quick method of resolution is potentially to a Patient's advantage.  The Parties agree that the reasons stated above are proper consideration for the acceptance of the Agreement.

**4.     FAA:**  The Parties hereby agree and intend that this Agreement, the Admission Agreement and the Patient's stays at the Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") in effect as of November 1, 2008 and federal case law interpreting such version of the FAA shall apply to this Agreement, shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law.  Any amendment to such version of the FAA is hereby expressly waived.

**5.     Binding on Parties & Others:**  The Parties intend that this Agreement shall inure to the direct benefit of and bind the Center, its parent, affiliates, and subsidiary companies, management companies, executive directors, owners, officers, partners, shareholders, directors, medical directors, employees, successors, assigns, agents, insurers and any entity or person (including health care providers) that provided any services, supplies or equipment related to the Patient's stay at the Center, and shall inure to the direct benefit of and bind the Patient (as defined herein), his/her successors, spouses, children, next of

kin, guardians, administrators, legal representatives, responsible parties, assigns, agents, attorneys, health care proxies, health care surrogates, third Party beneficiaries, insurers, heirs, trustees, survivors and representatives, including the personal representatives or executors of his/her estate, any person whose claim is derived through or on behalf of the Patient or relates in any way to the Patient's stay(s) at this Center, or any person who previously assumed responsibility for providing Patient with necessary services such as food, shelter, clothing, or medicine, and any person who executed this Agreement or the Admission Agreement.

**6.    Fees and Costs:**  The Panels' fees and costs will be paid by the Center except in disputes over non-payment of Center charges wherein such fees and costs will be divided equally between the Parties.  NAF's administrative fees shall be divided equally among the Parties.  To the extent permitted by law, any Party who unsuccessfully challenges the enforcement of this Agreement shall be required to pay the successful Parties' reasonable attorney fees and costs incurred to enforce such contract (i.e., Motion to Compel Arbitration).  The Parties shall bear their own attorney fees and costs in relation to all preparation and attendance at the arbitration hearing, unless the Panel concludes that the law provides otherwise.  Except as stated above, the Parties waive any right to recover attorneys' fees and costs.

**7.    Confidentiality:**  The arbitration proceedings shall remain confidential in all respects, including all filings, deposition transcripts, discovery documents, or other materials exchanged between the Parties and the Panels' [sic] award.  In addition, following receipt of the Panels' [sic] award, each Party agrees to return to the producing Party within 30 days the original and all copies of documents exchanged in discovery and at the arbitration Hearing.

**8.    Waiver of this Agreement:**  Either Party may file its dispute in a court of law if the other Party approves, which approval shall only be established by such Party filing a response to the Complaint without moving in a timely manner, as prescribed by the applicable rules of court, to enforce this Agreement.  However, should one of the Parties to this Binding Arbitration Agreement breach its terms by initiating a lawsuit in the judicial forum, the Parties expressly agree that participation

in cooperative general discovery while a motion to compel arbitration is pending shall not constitute evidence of a waiver of the right to arbitrate. A waiver of the right to arbitrate a specific Dispute or series of Disputes, as described above, relieves neither Party of the contractual obligation to arbitrate *other* Disputes, including both permissive and mandatory counterclaims, unless also subsequently waived.

**9. Severability, Integration and Survival:** Any term, phrase or provision contained in this Agreement is severable, and in the event any of them is found to be void, invalid or unenforceable for any reason, this Agreement shall be interpreted as if such term, phrase or provision were not contained herein, and the remaining provisions of this Agreement shall not be affected by such determination and shall remain in full force and effect. This Agreement represents the Parties' entire agreement regarding Disputes, supersedes any other agreement relating to disputes, and it may only be changed in writing signed by all Parties. This Agreement shall remain in full force and effect notwithstanding the termination, cancellation or natural expiration of the Admission Agreement.

**10. No Jury Trial:** If this Agreement is found to be unenforceable and arbitration is not compelled, then as a default, the Parties agree that the disputes shall be resolved solely by a judge via a bench trial. Under no circumstances will a jury decide any dispute.

**11. Health Care Decision:** The Parties hereby stipulate that the decision to have the Patient move into this Center and the decision to agree to this Agreement are each a health care decision. The Parties stipulate that there are other health care facilities in this community currently available to meet the Patient's needs.

**12. Legal Representative:** The Patient's Legal Representative, by his or her signature below, hereby represents and stipulates that he/she has been authorized by the Patient to sign this Agreement on behalf of the Patient.

**BY SIGNING BELOW, THE PARTIES CONFIRM THAT EACH OF THEM HAS READ <u>ALL FOUR (4) PAGES OF THIS AGREEMENT</u> AND UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO A TRIAL BEFORE A JUDGE OR JURY AND**

**THAT EACH OF THEM CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT.**

Agreement, 10/06/09, at 1–4 (emphases in original).

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is clear. Our review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, *Extendicare Homes, Inc. v. Pisano*, 134 S.Ct. 2890 (2014) (quoting *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013)).

> "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." *Elwyn* [*v. DeLuca*], 48 A.3d [457], 461 [(Pa. Super. 2012)] (quoting *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004)). First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

*Pisano*, 77 A.3d at 654–655. "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Elwyn*, 48 A.3d at 461. There appears to be no disagreement that the claims are within the scope of the Agreement. Thus, we focus upon whether a valid agreement to arbitrate exists.

As to Manor Care's first issue on appeal, we agree that the trial court's opinion fails to recognize, no less apply, the liberal policy favoring arbitration contained in the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), as well as Pennsylvania law, to the instant Agreement. **See** Trial Court Opinion, 11/20/12. As we recently explained:

> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA"). The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.

*Pisano*, 77 A.3d at 661 (citations, quotation marks, and footnote omitted); *see also Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 324 (Pa. Super. 2015) ("Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the FAA"); *petition for allowance of appeal granted on other grounds*, 161 WAL 2015, 2015 WL 5569766 (Pa. September 23, 2015). This policy applies equally to all arbitration agreements, including those involving nursing homes. *See Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1203–1204 (2012) (holding that the FAA preempts state law that categorically prohibits arbitration of particular types of claims, which is "contrary to the terms and coverage of the FAA"); *accord Pisano*, 77 A.3d at 661 n.7 (same). Thus, "when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply

ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Gaffer Insurance Company, Ltd. v. Discover Reinsurance Company*, 936 A.2d 1109, 1114 (Pa. Super. 2007).

Here, the trial court's opinion includes cursory findings, a lack of substantive analysis, and a failure to discuss applicable law. As such, the decision below fails to recognize and apply the standards of the FAA and its liberal policy favoring arbitration.

In its second issue, Manor Care contends that the trial court erred in holding that Decedent lacked the requisite capacity to enter into the Agreement. Manor Care's Brief at 19. Despite the fact that MacPherson clearly indicated that he was not challenging Decedent's capacity to enter into the Agreement,[5] the trial court intimated that Decedent lacked the capacity to sign the Agreement, or signed it under duress, as follows:

> [T]he records reveal that by October 6, 2009, [Decedent] had lost more than 20 pounds since his initial August, 2009 hospitalization. He was dependent on staff and incontinent. His body was covered with blisters, scars[,] wounds, necrotic tissue, and lesions. He suffered from ailments, including [congestive obstructive pulmonary disorder] COPD, congestive heart failure, depression, Hepatitis C, diabetes and substance abuse. Mr.

---

[5] This statement by MacPherson appears in his supplemental answers to arbitration discovery apparently filed after the deadline for filing supplemental briefs in the trial court. Manor Care's Brief at 10. It is consistent with MacPherson's representation in his brief that "[c]apacity is simply a non-issue in this case." MacPherson's Substituted Brief at 36; [MacPherson's] Supplemental Answers to [Manor Care's] Interrogatories, 10/9/12 at ¶ 9(e).

MacPherson was deceased and not available for deposition, and, [Manor Care's] representative has no recollection of her conversation with him.

Trial Court Opinion, 11/20/12, at 1.

Although the trial court did not specifically reference Decedent's "capacity," it appears to conclude that Decedent's cognition was lacking in this regard. While the certified record before us reflects that Decedent had numerous physical ailments, including paraplegia, there is no indication or evidence of dementia, mental illness, disorientation, or even confusion. In fact, medical records indicate Decedent was alert and oriented as to person, place, and time until January 8, 2010. Supplemental Memorandum of Law in Support of Manor Care Defendants' Preliminary Objections to [MacPherson's] Amended Complaint ("Supplemental Memo"), 10/12/12, Exhibit K (Docket Entry No. 50). Indeed, Dr. Azad Khan, Decedent's treating physician, completed medical history and physical examination records and weekly progress notes from September 25, 2009, until October 31, 2009, which encompassed the period when Decedent signed the Agreement on October 6, 2009. Those notes consistently indicated that Decedent was alert and oriented to person, place, and time. ***Id.***

Moreover, the nursing admission evaluations completed on the date of admission, which was September 15, 2009, and the date of readmission, September 24, 2009, reveal that Decedent's cognitive status was "alert and oriented to time, person, place, and situation." Supplemental Memo at

Exhibit M. Even as of October 29, 2009, the nursing evaluation of Decedent's cognitive status remained the same. At all times from September 15, 2009, through October 29, 2009, the nursing staff at Manor Care deemed Decedent cognitively competent. *Id*.

Significantly, MacPherson did not visit Decedent when Decedent was admitted to Manor Care in September 2009 or near the time when Decedent signed the Agreement. Supplemental Memo at Exhibit N. Thus, MacPherson cannot attest to Decedent's mental status during that period. *Id*. at Exhibit N, ¶¶ 15–16; [MacPherson's] Supplemental Answers to [Manor Care's] Interrogatories, 10/9/12 at ¶ 18; Manor Care's Brief at Addendum B. In the absence of record evidence of Decedent's mental incapacity, this apparent conclusion by the trial court is not supported by the certified record and cannot be used as a basis for its decision.

In its third issue, Manor Care challenges the trial court's conclusion that the Agreement was either substantively or procedurally unconscionable, even though the trial court acknowledged that the provisions of the Agreement were neutral. Manor Care's Brief at 14. Manor Care asserts that the trial court specifically found that the Agreement's terms unreasonably favored Manor Care in four instances. *Id*. at 23.

The trial court stated:

[W]hen considering the medical condition of this resident, and his inability to negotiate the terms, it is apparent that the terms unreasonably favor the Defendant-drafters of the agreement, including, *inter alia*, losing challenger must pay opponent's

- 16 -

attorney fees and costs, arbitration costs to be equally divided, no jury trial, and very limited rights to appeal.

Trial Court Opinion, 11/20/12, at 2. This conclusion, as well, is unsupportable and cannot be used as a basis for the trial court's decision.

Our Supreme Court has explained:

> The classic and oft-quoted definition of "unconscionability" was articulated by the United States Court of Appeals for the District of Columbia Circuit in ***Williams v. Walker-Thomas Furniture Company***, 350 F.2d 445 (D.C. Cir. 1965):
>
>> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.
>
> 350 F.2d at 449 (Emphasis supplied).

***Witmer v. Exxon Corp***., 434 A.2d 1222, 1228 (Pa. 1981). Moreover,

> [a] determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions. ***McNulty v. H & R Block, Inc.***, 843 A.2d 1267, 1273 (Pa. Super. 2004).

***H & R Block Eastern Tax Services, Inc. v. Zarilla***, 69 A.3d 246, 250 (Pa. Super. 2013). The party challenging the agreement bears the burden of proof. ***Salley v. Option One Mortg. Corp.***, 925 A.2d 115 (Pa. 2007).

In addition to noting that the Agreement precludes a jury trial and imposes a limitation on appellate rights, the trial court identified the Agreement's provision that a losing challenger to its enforcement must pay the other party's fees and costs as evidence of unconscionability.

- 17 -

Agreement at 3, ¶ F(6). However, in preparing for arbitration, the Agreement provides that the parties pay their own fees and costs, similar to civil litigation practice in common pleas court. *Id*. at 3–4, ¶ F(6). Further, the Agreement contains a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury. *Id*. at 1. Indeed, that is the purpose of arbitration. *See e.g.*, *Hayes v. Oakridge Home*, 908 N.E.2d 408, 414 (Ohio 2009) ("waiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable.").

Moreover, at the top of the Agreement, in bold typeface and underlined, the Agreement states that it is voluntary, and if the patient refused to sign it, "the Patient will still be allowed to live in, and receive services" at Manor Care. Agreement at 1. Also, the Agreement provides that Manor Care will pay the arbitrators' fees and costs, and that there are no caps or limits on damages other than those already imposed by state law. *Id*. at 3, ¶¶ F(1), F(6). Lastly, the Agreement contains a provision allowing the patient to rescind within thirty days. *Id.* at 3, ¶ E. Our review compels our conclusion that the Agreement should not be invalidated on the basis of procedural or substantive unconscionability.

In its fourth issue, Manor Care asserts that the trial court erred in holding that the Agreement was unenforceable due to the failure of a term in

the Agreement designating the National Arbitration Forum ("NAF") to administer the arbitration. Manor Care's Brief at 5. The NAF can no longer accept arbitration cases pursuant to a consent decree it entered with the Attorney General of Minnesota. *See Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 217 (Pa. Super. 2010). The trial court, absent any analysis, included a single sentence in its perfunctory opinion addressing this issue: "Finally, it does appear that there is a failure of an integral term which is not severable, that is, the NAF requirements." Trial Court Opinion, 11/20/12, at 2.

MacPherson relies upon *Stewart*[6] in defending this determination.[7] In that case, the plaintiff, by her attorney-in-fact, brought a negligence action against a nursing home facility, which filed preliminary objections seeking to compel enforcement of an arbitration agreement that included a forum selection clause designating the NAF and its procedures. *Stewart*, 9 A.3d at 216–217. The trial court in *Stewart* determined that the arbitration agreement was unenforceable because the provisions designating the NAF and its procedures were integral to the agreement and could not be enforced

---

[6] *See Wert v. Manorcare of Carlisle PA LLC*, ___ A.3d ___, 2015 WL 6499141 (Pa. filed October 27, 2015) (plurality), where our Supreme Court recently stated in its Opinion Announcing the Judgment of the Court, "[W]e decline to overturn *Stewart* . . . ."]. Unlike *Stewart*, this Court's decision in *Wert* was a memorandum decision devoid of precedential value. Thus, it rightly was not discussed by the parties in their appeal in the instant case.

[7] The trial court herein also cited *Stewart*, but it did not engage in any analysis of the case's applicability.

due to the unavailability of the NAF. *Id.* at 217. The trial court concluded that an agreement to submit to a specific forum and its comprehensive set of rules evidenced an express intention to arbitrate exclusively before that organization. *Id.* The trial court also determined that the severability clause could not save the arbitration agreement because the court would be forced to rewrite the forum selection clause and devise a substitute forum and mode of arbitration for the parties. *Id*. This Court reviewed the trial court's decision as a matter of first impression and affirmed by specifically adopting the trial court's reasoning. *Id*. at 219.

We conclude that **Stewart**, and therefore **Wert**,[8] is distinguishable. The distinguishing features also compel our disagreement with the position of the dissent in the instant case. First, **Wert** is a plurality decision; a plurality opinion is not binding precedent. **Shinal v. Toms**, 122 A.3d 1066 (Pa. Super. 2015). As our Supreme Court has explained: "While the ultimate order of a plurality opinion; *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality **certainly do not constitute binding authority**." *Id*. at *8 (emphasis added) (citing **In Interest of O.A.**, 717 A.2d 490, 495–496 n. 4 (Pa. 1998)).

---

[8] The initial issue placed before our Supreme Court in **Wert** described the arbitration agreement in **Wert** as "identical" to the agreement in **Stewart**. **Wert**, ____ A.3d at ____, slip op. at *1.

Moreover, **Wert** has significant differences from the instant case. Our Supreme Court noted that the **Wert** arbitration agreement, similar to **Stewart**, provided that the parties therein agreed that any disputes "shall be resolved **exclusively** by binding arbitration to be conducted . . . in accordance with the NAF Code of procedure." **Wert**, ___ A.3d at ___, *10 (emphasis in original); **see also** ___ A.3d at ___, *10 n.15 (use of word "exclusively" in **Wert** arbitration agreement distinguishes it from language of agreement in **Green v. U.S. Cash Advance Illinois, LLC**, 724 F.3d 787, 788 (7th Cir. 2013)). The instant Agreement is glaringly distinct due to the **absence** of any reference to the exclusivity of NAF. Indeed, the Agreement herein provided that the parties had the option of not using NAF or even not using an administrator. Significantly, the instant Agreement made "the NAF's availability non-essential," which is the proviso cited by the **Wert** Court as modifying its holding. **See Wert**, ___ A.3d at ___, *10 ("Section five of the FAA cannot preserve NAF-incorporated arbitration agreements **unless the parties made the NAF's availability non-essential** by varying the terms of its procedure.") (emphasis added).

We stated in **Stewart**, "[A]n arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' choice of forum is an 'integral part' of the agreement to arbitrate, rather than 'an ancillary logistical concern.'" **Stewart**, 9 A.3d at 219 (citing **Reddam v. KPMG L.L.P.**, 457 F.3d 1054, 1061 (9th Cir. 2006); and **Brown v. ITT**

- 21 -

*Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)). Moreover, since the parties in *Stewart* and *Wert* expressly agreed that any disputes would be resolved **exclusively** through arbitration with the NAF, this Court found the **exclusive** forum selection clause to be an integral part of the arbitration agreement.  Relying primarily on the exclusive forum selection clause, we thus held that the unavailability of the NAF rendered the arbitration agreement unenforceable.  *Stewart*, 9 A.3d at 222.  Like *Stewart*, the *Wert* Court focused on the arbitration agreement's exclusivity provision therein.

In the present case, however, the plain language of the Agreement does not evince an intent to arbitrate **only** before the NAF.[9]  It provides a hierarchy of sorts that places NAF in the initial position:

> 1.    **Administrator**:  The arbitration shall be administered by National Arbitration Forum ("NAF"). . . . If the Parties mutually agree in writing not to select NAF **or if the NAF is** unwilling or **unable to serve as the Administrator**, the Parties **shall** agree upon another independent entity to serve as the Administrator, unless the Parties mutually agree to not have an Administrator.

Agreement at 1 ¶ B(1) (emphasis added).[10]  The language in the instant Agreement is thus permissive, not mandatory, and provides for an alternative to NAF if it is unable or unwilling to serve, or if the parties choose

---

[9]    In fact, NAF-approved arbitrators are not required under the Agreement. Agreement at 1, ¶ B(3).

[10]   This provision is consistent with § 5 of the FAA which provides that an arbitrator will be appointed by the court if the parties cannot select one. 9 U.S.C. § 5.

otherwise. The arbitration agreements in **Stewart** and **Wert** contained no such provisions.[11] Therefore, we hold that the non-exclusive forum-selection clause herein is not an integral part of the Agreement, and the Agreement does not fail because of the unavailability of the NAF.

We also reject MacPherson's contention that the Agreement's reference to the use of the NAF Code of Procedure in effect as of May 1, 2006 ("2006 Code") renders the Agreement unenforceable. First, we note that the referenced 2006 Code could not be found in the certified record on appeal; rather, it was merely attached as Exhibit A to MacPherson's brief. We remind MacPherson that:

> [t]he law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. [A]n appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.

---

[11] We reject the dissent's suggestion that because the arbitration agreement in **Wert** is substantially similar to the Agreement herein, **Wert** compels affirmance of the instant case. The exclusivity of the NAF provisions in the arbitration agreements in **Wert** and **Stewart**, which is not a factor in the case *sub judice*, is the very basis for our Supreme Court's affirmance in **Wert**. Substantial **dissimilarity** thus distinguishes **Wert** and **Stewart**. The exclusivity of the NAF in the **Wert** and **Stewart** arbitration agreements simply is not present in the case *sub judice*, and that "meaningful difference," **see** Dissenting Opinion at 3, is the *raison d'etre* why **Wert** is distinguishable.

*Commonwealth v. Preston*, 904 A.2d 1, 6–7 (Pa. Super. 2006) (*en banc*) (internal citations omitted). "[F]or purposes of appellate review, what is not in the certified record does not exist." *Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013), *appeal denied*, *Ruspi v. Glatz*, 81 A.3d 78 (Pa. 2013). Thus, any arguments based on the specific provisions of the 2006 Code are waived.[12]

Alternatively, we conclude that the provisions specifying the use of the 2006 Code are not integral parts of the Agreement and do not render the Agreement invalid. The relevant provisions of the Agreement provide, in part, as follows:

> **B. 5. Procedural Rules and Substantive Law**:  The Panel shall apply the Federal Rules of Evidence and Federal Rules of Civil Procedure except where otherwise stated in this Agreement. Also the Panel shall apply, and the arbitration award shall be consistent with, the State substantive law (including any and all statutory damage caps) for the State in which the Center is located, except as otherwise stated in this Agreement or where preempted by the FAA.  The Panel shall apply NAF's Code of Procedure (in effect as of May 1, 2006) unless otherwise stated in this Agreement . . . . The Parties hereby opt out of NAF Rules

---

[12]  The dissent's rejection of waiver, Dissenting Opinion at fn. 2, is a refusal to acknowledge that **MacPherson** is the party who relied upon the 2006 Code in making this argument.  Thus, **MacPherson** is the party who bore the burden of including the document in the record.  Manor Care had no duty to include in the record a document solely relied upon by an opposing party. Manor Care cannot be held to have been responsible for MacPherson's dereliction in completing the record in the first place.  It was not Manor Care's duty to include in the record a document relied upon by the opposing party that apparently was never formally introduced and made part of the certified record.  *Parr v. Ford Motor Co.*, 109 A.3d 682, 695 n.10 (Pa. Super. 2014), *appeal denied*, (Pa. May 27, 2015), *petition for cert. filed*, 2015 WL 3500130, October 15, 2015.

(45 regarding indigents; 43 regarding appeals and judicial review).

\* \* \*

**D.     DISCOVERY**:  Discovery shall be governed by NAF's Code of Procedure.     However, discovery shall be limited as follows . . . .  **(6)** The Parties may agree to modify these discovery terms or deadlines.

Agreement at 2, ¶¶ B(5) and (D) (emphasis in original).

In analyzing the above provisions, we are once again guided by our previous pronouncements in this area.  "Where the arbitration clause selects merely the rules of a specific arbitral forum, as opposed to the forum itself, and another arbitral forum could apply those rules, the unavailability of the implicitly intended arbitral forum will not require the court to condemn the arbitration clause."  ***Stewart***, 9 A.3d at 219 (citing ***Reddam***, 457 F.3d at 1059-1061).  As concluded previously, the Agreement at issue does not select a specific arbitral forum; rather, it creates a hierarchy, with alternatives to the NAF.  Conceivably, another arbitral forum could apply the designated rules and procedures.  ***Stewart***, 9 A.3d at 219.[13]  Thus, in the

---

[13]  MacPherson suggests that the 2006 Code cannot be "separated" from the NAF because, pursuant to Rule 1 of the 2006 Code, NAF staff are required to administer the arbitrations that take place under the NAF Code. MacPherson's Substituted Brief at 18–21.  Even if any arguments based on the specific provisions of the 2006 Code were not waived for failure to include that Code in the certified record, this argument lacks merit since this provision appears to conflict with other provisions in that Code.  **See**, **e.g.**, Rule 47 of the 2006 Code (neither the Forum, nor its director, nor any employee or agent of the forum shall administer the arbitration). MacPherson's Substituted Brief at Appendix A.    Indeed, the instant

absence of an **exclusive** forum-selection clause, we hold that the provisions relating to the use of the 2006 Code are not integral to the Agreement.

Moreover, because the provisions referring to the use of the 2006 Code are not integral to the Agreement, as they were in *Wert* and *Stewart*, they can be severed under the severance provision, which provides as follows:

> **9. Severability, Integration and Survival: Any** term, phrase or **provision contained in this Agreement is severable, and in the event any of them is found to be void, invalid or unenforceable for any reason, this Agreement shall be interpreted as if such term, phrase or provision were not contained herein**, and the remaining provisions of this Agreement shall not be affected by such determination and shall remain in full force and effect. . . .

Agreement at 4, ¶ F(9) (emphasis added).

Finally, we consider the effect of *Pisano*, 77 A.3d 651, and ensuing opinions of this Court on the resolution of this matter. As an initial matter, we conclude *Pisano* is distinguishable. In *Pisano*, the appellee, who was the decedent's son and administrator of his father's estate, brought a wrongful death suit against the appellant, a long-term care nursing facility. The nursing facility filed preliminary objections based upon the existence of an alternative dispute resolution agreement between the facility and the decedent. *Pisano* held that while wrongful death actions are derivative of decedents' injuries, they are not derivative of decedents' rights, and

---

Agreement itself does not require the use of NAF-approved arbitrators. Agreement at 1¶ B(3).

therefore belong to the decedent's beneficiaries as opposed to the deceased individual. ***Pisano***, 77 A.3d at 660. Thus, as a wrongful death beneficiary, the decedent's son was not bound by the Agreement.

As we explained in ***Pisano***, under the Pennsylvania wrongful death statute, recovery passes to the limited group of beneficiaries defined in the statute:

> **§ 8301. Death action**
>
> **(a) General rule.--**An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.
>
> **(b) Beneficiaries.--**Except as provided in subsection (d), **the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased** . . . .
>
> * * *
>
> **(d) Action by personal representative.--**If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

42 Pa.C.S. § 8301 (a), (b), (d) (emphasis added).

MacPherson, as brother of Decedent, does not fall within the group of beneficiaries designated by the statute under subsection (b) above, and he has not identified any individuals who would be entitled to recover damages

under that provision. He is the executor of Decedent's estate, and as such, he may bring a wrongful death action solely for the benefit of the estate pursuant to subsection (d). A limited claim by a personal representative pursuant to § 8301(d) is derivative of and defined by the decedent's rights. Conversely, an action for wrongful death benefits pursuant to § 8301(b), although usually commenced by the personal representative on behalf of the beneficiaries, belongs to the designated relatives and exists only for their benefit. **Pisano**, 77 A.3d at 657 (citing **Moyer v. Rubright**, 651 A.2d 1139, 1141 (Pa. Super. 1994)). Accordingly, we conclude that **Pisano** is applicable only to wrongful death claims brought on behalf of the beneficiaries designated in 42 Pa.C.S. § 8301(b). Personal representatives proceeding pursuant to § 8301(d), however, are bound by otherwise enforceable arbitration agreements signed by a decedent.

This distinction was recognized by a recent panel of this Court in **Taylor**, 113 A.3d 317, within the context of Pa.R.C.P. 213 (e).[14] **Taylor**

---

[14] Pa.R.C.P. 213 (e) provides as follows:

(e) A cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial.

(1) If independent actions are commenced or are pending in the same court, the court, on its own motion or the motion of any party, shall order the actions consolidated for trial.

involved three alleged joint tortfeasors whose **combined negligence** allegedly caused the death of a nursing home resident. Consistent with *Pisano*, *supra*, the *Taylor* panel initially held that an arbitration agreement between a nursing home resident and the nursing home facility was not binding upon a non-signatory wrongful death beneficiary. *Taylor*, 113 A.3d at 320. Applying Rule 213(e), however, the panel also held that the trial court was not required to have bifurcated the non-signatory beneficiary's wrongful death claim and the survival claim to compel arbitration of the survival claim in that case. In doing so, the *Taylor* panel distinguished the situation currently before us, as follows:

> In the situation where the decedent or his representative has entered an enforceable agreement to arbitrate, and the wrongful death action is one brought by the personal representative pursuant to 42 Pa.C.S. § 8301(d) for the benefit of the decedent's estate, there would not appear to be any impediment to the consolidation of the actions in arbitration.

*Taylor*, 113 A.3d at 325.

---

> (2) If independent actions are commenced in different courts, the court in which the second action was commenced, on its own motion or the motion of any party, shall order the action transferred to the court in which the first action was commenced.
>
> (3) If an action is commenced to enforce one cause of action, the court, on its own motion or the motion of any party, may stay the action until an action is commenced to enforce the other cause of action and is consolidated therewith or until the commencement of such second action is barred by the applicable statute of limitation.

Thus, for all of the above reasons, we reverse and remand this case for proceedings consistent with this Opinion.  Jurisdiction relinquished.[15]

Judges Bowes, Donohue, Olson, Stabile, and Jenkins join the Opinion.

Judge Mundy files a Dissenting Opinion in which Judges Lazarus and Wecht join.

---

[15]  MacPherson also asserted in his substituted brief that the Agreement should not be enforced because it would place joint tortfeasor claims in different forums, "a result that is impermissible under Pennsylvania law." MacPherson's Substituted Brief at 45.  The pleadings, however, do not support MacPherson's characterization of the Hospital Defendants and Manor Care as joint tortfeasors.  The Hospital Defendants and Manor Care did not act together.  The allegations against the Hospital Defendants relate solely to their conduct and resulting injuries to Decedent from August 20, 2009, to September 15, 2009; the claims against Manor Care originate in its conduct from September 15, 2009, through February 1, 2010.  Only Manor Care is alleged to have caused the wrongful death of Decedent.  Thus, it would appear that the claims against the Hospital Defendants are sufficiently distinct from the claims against Manor Care as to be capable of resolution in different forums.  Accordingly, the facts herein are further distinguishable from those in **Taylor** and **Tuomi v. Extendicare, Inc.**, 119 A.3d 1030 (Pa. Super. 2015), where it was alleged that the conduct of the various defendants combined to cause the decedents' wrongful death.

We also note that our Supreme Court's grant of the petition for allowance of appeal in **Taylor** will address whether Pa.R.C.P. 213(e) requires the consolidation of the otherwise arbitrable survival action with the non-arbitrable wrongful death action on grounds of efficiency and whether that conclusion violates the FAA.  **Taylor v. Extendicare Health Facilities, Inc.**, 161 WAL 2015, 2015 WL 5569766, at *1 (Pa. September 23, 2015).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/25/2015</u>