J-A13007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ERNEST EWING CHRISTOPHER, EXECUTOR FOR THE ESTATE OF MILDRED F. SNYDER | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC UNIONTOWN, LP D/B/A GOLDEN LIVING CENTER UNIONTOWN; GGNSC UNIONTOWN GP, LLC; GGNSC HOLDINGS, LLC; GGNSC EQUITY HOLDINGS, LLC; GPH UNIONTOWN, LP; GGNSC ADMINISTRATIVE SERVICES, LLC; GGNSC CLINICAL SERVICES, LLC; GOLDEN GATE ANCILLARY, LLC; AND JOYCE HOCH, NHA | : : : : : : : : : : : : | No. 864 WDA 2017 |
| Appellants | : | |

Appeal from the Order May 23, 2017
In the Court of Common Pleas of Fayette County Civil Division at No(s):
No. 559 of 2016 GD

BEFORE:   OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    FILED JANUARY 04, 2019

Appellants, Golden Gate National Senior Care, LLC, et al., appeal from an order entered on May 23, 2017 in the Civil Division of the Court of Common Pleas of Fayette County that overruled their preliminary objections which sought to compel arbitration. We vacate and remand.

Appellee, Ernest Ewing Christopher, executor of the estate of Mildred F. Snyder, commenced this action by filing a complaint in the Court of Common

Pleas of Fayette County on March 21, 2016. The complaint alleged survival and wrongful death claims against Appellants arising from Mrs. Snyder's residency at the Golden Living Uniontown Facility ("the Facility"). Appellants filed preliminary objections to the complaint on April 30, 2014 seeking, inter alia, to compel Alternative Dispute Resolution (ADR) pursuant to an ADR agreement signed by Mrs. Snyder's husband, Donald Snyder, upon Mrs. Snyder's admission to the Facility in 2006. Following discovery, briefing and argument, the trial court overruled Appellants' preliminary objections on May 23, 2017.

Appellants timely appealed from the May 23, 2017 order on June 14, 2017. On June 27, 2017, the trial court issued an order pursuant to Pa.R.A.P. 1925(b) directing Appellants to file and serve a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied on July 3, 2017 and the trial court issued its Rule 1925 opinion on August 17, 2017. In sum, the court found that there was no meeting of the minds because the ADR agreement did not clearly identify the parties to the contract; additionally, the court found that Mr. Snyder lacked authority to execute the agreement; and, finally, the court deemed the agreement to be void due to lack of consideration and unconscionability.

Appellants raise the following claims in their brief:

I.    Whether the order refusing to compel enforcement of the ADR Agreement is immediately appealable as of right?

II.   Whether the ADR Agreement is void due to either inadequate consideration or unconscionability?

III.    Whether the Trial Court correctly found that Donald Snyder lacked authority to execute the ADR Agreement?

IV.    Whether the ADR Agreement is unenforceable because it did not adequately identify the parties to the Agreement?

Appellants' Brief at 4.[1]

Before turning to the merits of this appeal, we consider the issue involving the appealability of the instant interlocutory order since it pertains to our authority to exercise jurisdiction of this dispute. See In re: Estate of Cherwinski, 856 A.2d 165, 166 (Pa. Super. 2004) ("[Superior Court] may raise the issue of appealability sua sponte because it affects our jurisdiction over the case.").

"Under Pennsylvania law, an appeal may [] be taken from an interlocutory order as of right (Pa.R.A.P. 311), from a final order (Pa.R.A.P. 341), from a collateral order (Pa.R.A.P. 313), or from any interlocutory order by permission (Pa.R.A.P. 31[2], [Pa.R.A.P.] 1311, 42 Pa.C.S.A. § 702(b))." Cont'l Bank v. Andrew Bldg. Co., 648 A.2d 551, 553 (Pa. Super. 1994). Pursuant to Pa.R.A.P. 311(a)(8), "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . . [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). By statute, an appeal may be taken from a court order denying an application to compel arbitration made under 42 Pa.C.S.A. § 7304. See 42 Pa.C.S.A. § 7320(a)(1).

_____

[1] We have re-ordered the issues raised in Appellants' brief for ease of disposition.

In this case, we consider a trial court order that overruled preliminary objections seeking enforcement of an ADR agreement entered into between Appellants and Mrs. Snyder. The gravamen of Appellants' claim is that Mrs. Snyder delegated her authority to sign an ADR agreement to her husband, Mr. Snyder.

On August 22, 2017, this Court entered a rule to show cause against Appellants, directing them to explain why the trial court's order was appealable. Our show cause order cited to this Court's previous opinion in Armstrong World Industries, Inc. v. Travelers Indemnity Company, 115 A.3d 342 (Pa. Super. 2015) (Armstrong). In Armstrong, a panel of this Court concluded that while a request to compel arbitration was immediately appealable as of right, a request to compel other types of dispute resolution was not.[2]

After the issuance of our decision in Armstrong, our Supreme Court decided Taylor v. Extendicare Health Facilities, Inc., 147 A.3d 490 (Pa. 2016). At issue in Taylor was the enforceability of an ADR provision that, like the one presently before us, provided that the parties would first pursue mediation and, if that failed, then pursue binding arbitration. See Taylor, 147 A.3d at 494. The trial court's order overruling the Taylor defendants' preliminary objections was appealed to this Court pursuant to 42 Pa.C.S.A.

_____

[2] The ADR provisions in the parties' agreement in Armstrong ranged from negotiation to binding arbitration.

- 4 -

§ 7320(a)(1) and, ultimately, our Supreme Court enforced the ADR provision. Appellants argue, and we agree, that our Supreme Court's decision in Taylor displaces our prior ruling in Armstrong. Thus, we have jurisdiction to consider this appeal.

We initially observe that our review of a claim challenging a trial court's order overruling preliminary objections in the nature of a petition to enforce an arbitration clause found in a contractual agreement "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." Cardinal v. Kindred Healthcare, Inc., 155 A.3d 46, 49-50 (Pa. Super. 2017) (citation omitted), appeal denied 170 A.3d 1063 (Pa. 2017). "As contract interpretation is a question of law, our review of the trial court's decision is de novo and our scope is plenary." Id.

Appellants' second issue challenges the trial court's conclusion that the ADR agreement in question is unenforceable because it is unconscionable. This Court recently explained:

> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA). The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.
>
> MacPherson v. Magee Meml Hosp. for Convalescence, 128 A.3d 1209, 1219 (Pa. Super. 2015) (en banc), quoting Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 661 (Pa. Super. 2013)

(citations, quotation marks, and footnote omitted). When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration. Gaffer, 936 A.2d at 1114.

Cardinal, 155 A.3d at 52-53.

Here, the trial court offered two conclusory determinations in finding the ADR clause sub judice to be unconscionable. First, the court found, without elaboration, that the ADR clause was substantively unconscionable because the benefits to Appellants were "grossly disproportionate" to any value received by Mrs. Snyder. See Trial Court Opinion, 8/17/17, at 5. Second, the court concluded that the ADR clause was procedurally unconscionable since the circumstances of its execution left Mr. Snyder without meaningful choice. After careful review, we conclude that these assessments are contrary to Pennsylvania law and unsupported by the record. We therefore cannot agree that the Snyders met their burden of proving that the clause is unenforceable. See Sally v. Option One Mort. Corp., 925 A.2d 115, 129 (Pa. 2007).

> "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." MacPherson, 128 A.3d at 1221, quoting Williams v. Walker–Thomas Furniture Company, 350 F.2d 445, 449 (D.C. Cir. 1965)[.]
>
> An unconscionability analysis requires a two-fold determination: (1) that the contractual terms are unreasonably favorable to the drafter ("substantive unconscionability"), and (2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions ("procedural unconscionability").

> MacPherson, 128 A.3d at 1221 (citations omitted). Courts have refused to hold contracts unconscionable simply because of a disparity of bargaining power between the two parties. Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981); see also K & C, Inc. v. Westinghouse Electric Corp., 263 A.2d 390 (Pa. 1970).

Cardinal, 155 A.3d at 53-54 (parallel citations omitted).

Our review of the parties' agreement leads us to conclude that, because the provision sub judice contains terms similar to the agreements examined in our prior cases such as Cardinal and MacPherson, the ADR clause here is neither procedurally nor substantively unconscionable, and that the trial court wrongly refused to enforce it. Cf. MacPherson, 128 A.3d at 1221-1222 (arbitration agreement was neither procedurally nor substantively unconscionable where it provided: "(1) the parties shall pay their own fees and costs, similar to civil litigation practice in common pleas court; (2) a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury; (3) a notification at the top of the agreement, in bold typeface and underlined, that it is voluntary, and if the patient refuses to sign it, the Patient will still be allowed to live in, and receive services at the facility; (4) a provision that the facility will pay the arbitrators fees and costs; (5) a statement that there are no caps or limits on damages other than those already imposed by state law; and (6) a provision allowing the patient to rescind within thirty days") (internal quotations omitted); Cardinal, 155 A.3d at 53-54 (same). Moreover, the trial court's finding that Mr. Snyder lack meaningful choice in signing the agreement is contrary to the

record. Mr. Snyder was not coerced into signing the agreement. In fact, he admitted that he voluntarily signed the agreement and was not pressured to do so. Also, both he and his wife understood that signing the agreement meant Mrs. Snyder waived her right to a jury trial. In light of these factors, we reject the trial court's conclusion that the ADR clause here was unconscionable.

As for the trial court's finding that the ADR agreement is void for lack of consideration, we disagree. In rendering this conclusion, the trial court found that Mrs. Snyder "received no benefit whatsoever for her agreement for ADR." Trial Court Opinion, 8/17/17 at 5. Thus, the trial court determined that consideration for the ADR agreement was lacking. In citing to this conclusion reached by the trial court, Appellee acknowledges that the ADR agreement at issue provides that the "speed, efficiency, and cost-effectiveness of the ADR process . . . constitute good and sufficient consideration for the acceptance and enforcement of this Agreement." Appellee's Brief at 36. However, Appellee's argument is that the stated purpose of this clause, i.e., speed, efficiency and cost-effectiveness, would be undermined if the survival claim was handled pursuant to the ADR agreement and the wrongful death claim proceeded in the Court of Common Pleas. Thus, Appellee agrees with the trial court that there is no benefit to Appellee to apply the ADR agreement. This argument must fail. As our Supreme Court noted in Taylor, "the prospect of inefficient, piecemeal litigation proceeding in separate forums is no

- 8 -

impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [United States Supreme] Court requires, as a matter of law, adjudication in separate forums." Taylor, 147 A.3d at 507. Thus, any alleged lack of benefit to Appellee to proceed with the survival claim under the ADR agreement does not void the agreement.

Turning to Appellants' third issue, we are also unable to agree with the trial court's conclusion that Mr. Snyder lacked authority to sign the agreement on behalf of his wife. The following principles govern our examination of this issue.

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. See Bolus v. United Penn Bank, 525 A.2d 1215 (Pa. Super. 1987). Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. See Passarelli v. Shields, 156 A.2d 343 (Pa. Super. 1959). Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. See Turner Hydraulics v. Susquehanna Construction Co., 606 A.2d 532 (Pa. Super. 1992). Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. See Turnway Corp. v. Soffer, 336 A.2d 871 (Pa. 1975).

Walton v. Johnson, 66 A.3d 782, 787 (Pa. Super. 2013) (parallel citations omitted).

We have described the formation of agency relationships in the following manner:

> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. Lapio v. Robbins, 729 A.2d 1229, 1234 (Pa. Super. 1999) (citation omitted). The creation of an agency relationship requires no special formalities. Lincoln Avenue Indus. Park v. Norley, 677 A.2d 1219, 1222 (Pa. Super. 1996). The existence of an agency relationship is a question of fact. Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351 (Pa. Super. 1992). The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. Id. "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed." Commonwealth v. Maker, 716 A.2d 619, 623 (Pa. Super. 1998), [affirmed 761 A.2d 1167 (Pa. 2000) (per curiam)]. However, we do not assume agency by a mere showing that one person does an act for another. Ferry v. Fisher, 709 A.2d 399, 405 n.5 (Pa. Super. 1998).

Walton, 66 A.3d at 787, quoting B & L Asphalt Industries, Inc. v. Fusco, 753 A.2d 264, 269 (Pa. Super. 2000).

The record confirms that Mr. Snyder executed the arbitration agreement with express authority. After Appellants' representative presented and explained the agreement to both Mr. and Mrs. Snyder, Mrs. Snyder, who understood the nature of the document at issue, expressly instructed her husband, Mr. Snyder, to sign the arbitration agreement. The record before us leaves little doubt that Mr. Snyder enjoyed express authority to sign the arbitration contract.

Lastly, we cannot agree that the contract did not adequately identify the parties. Citing our decision in Bair v. Manor Care Elizabethtown, PA, LLC, 108 A.3d 94 (Pa. Super. 2015), the trial court concluded that the absence of Mildred Snyder's name on the first page of the agreement meant that there was no meeting of the minds concerning the agreement. Bair is easily distinguished, however. In that case, the facility did not execute the agreement, which implied that there was no meeting of the minds and that the form agreement failed to adequately identify the parties. Here, in contrast, Mrs. Snyder is identified as the resident at the end of the agreement, just above her husband's signature, and the document was signed by an authorized representative of the Facility. Thus, the agreement in this case properly identified the parties to be bound by the agreement.

For each of the foregoing reasons, we are compelled to conclude that the ADR agreement executed by the parties is valid and enforceable. Thus, the trial court should have directed the parties to proceed in accordance with the ADR agreement as applicable under Pennsylvania law. Specifically, Appellee's survival claims are subject to the ADR provision while the wrongful death claims may proceed before the Court of Common Pleas. See Pisano, 77 A.3d at 661-662 (survival claims of decedent signatories are subject to compulsory arbitration but non-signatory wrongful death claimants cannot be compelled to arbitrate claims under Pennsylvania's Wrongful Death Act). The trial court's contrary ruling was in error.

Order vacated. Case remand with instructions. Jurisdiction relinquished.

Judge Dubow joins this Memorandum.

Judge Musmanno notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/4/2019