2019 PA Super 262

| TTSP CORPORATION F/K/A THE ROSE LOU CORPORATION F/K/A THE ROSE CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THE ROSE CORPORATION (AS SUCCESSOR IN INTEREST TO ROSE ACQUISITION SUB 1, LLC AS ASSIGNEE OF ROSE ACQUISITION COMPANY, LLC. | |
| Appellant | No. 1498 MDA 2018 |

Appeal from the Order Entered August 23, 2018
In the Court of Common Pleas of Berks County
Civil Division at Nos.: 17-18175; 18-885

BEFORE:  BOWES, OLSON, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED AUGUST 27, 2019**

The Rose Corporation, as successor in interest to Rose Acquisition Sub 1, LLC as assignee of Rose Acquisition Company, LLC (hereinafter "Appellant" or "Buyer"), appeals from the August 23, 2018 order of the Court of Common Pleas of Berks County, which overruled Appellant's preliminary objections in favor of TTSP Corporation, f/k/a The Rose Lou Corporation, f/k/a The Rose Corporation (hereinafter "Appellee" or "Seller").  Upon careful review, we reverse and remand.

The facts and procedural history of this case are long, tortured and, at times, convoluted.  On November 4, 2016, Buyer and Seller entered into an asset purchase agreement (the "Agreement") pursuant to which Buyer

purchased for $1,250,000.00 Seller's business that provided contract manufacturing, industrial fabrication and related installation services. The Agreement, 11/4/16, at ¶ 2.1.1. The Agreement contained a purchase price adjustment ("PPA") provision, increasing or decreasing the purchase price "by the amount by which the extent that Seller's Closing Working Capital on the Closing Date is less than or greater than" $519,394.00. *Id.* at ¶ 2.2.1. The Agreement defined Closing Working Capital as "(x) accounts receivable (net of reserves), plus useable and saleable inventory, plus prepaid expenses, minus (y) trade accounts payables, plus accrued liabilities." *Id.* The Agreement contemplated that the closing shall occur on December 1, 2016. *Id.* at ¶ 3.1. The Agreement further provided:

> 2.2.2 Within thirty (30) days following the Closing Date, Buyer shall deliver to Seller Buyer's calculation of the Purchase Price Adjustment, together with a written statement setting forth in reasonable detail Buyer's calculation of Seller's Closing Working Capital as of the Closing Date and December 31, 2015.
>
>   . . . .
>
> 2.2.3 The Proposed Purchase Price shall become final and binding upon the parties on the thirtieth (30th) day following the date on which the Proposed Purchase Price Adjustment was given to Seller in accordance with Section 12.7 below, unless Seller delivers written notice of its disagreement with the Proposed Purchase Price Adjustment ("Notice of Disagreement") to Buyer prior to such date. Any Notice of Disagreement shall specify in reasonable detail the nature of any disagreement so asserted. If a Notice of Disagreement is received by Buyer in a timely manner, then during the thirty (30) day period following the delivery of the Notice of Disagreement, Buyer and Seller shall seek in good faith to resolve in writing any differences that they may have with respect to the matters specified in the Notice of Disagreement. If at the end of such thirty (30) day period the Buyer and Seller have

not resolved in writing the matters specified in the Notice of Disagreement, Buyer and Seller shall submit to an independent accounting firm (the Accounting Firm), ***as shall be agreed upon by Buyer and Seller in writing, for determination of the Purchase Price Adjustment***. . . . The Accounting Firm will resolve the dispute pursuant to such procedures that it establishes and deems fair and equitable, provided that Buyer and Seller must each be afforded an opportunity to provide a written submission in support of its position and to advocate for its position personally before the Accounting Firm. Judgment may be entered upon the determination of the Accounting Firm in any court having jurisdiction over the party against which such determination is to be enforced.

***Id.*** at ¶¶ 2.2.2 and 2.2.3 (emphasis added).

Eventually, a dispute arose concerning the amount of the proposed PPA, in response to which, on August 23, 2017, Seller petitioned the trial court to appoint "an independent accountant/arbitrator" under Section 2.2.3 of the Agreement and Section 7305 of the Uniform Arbitration Act ("Act"), 42 Pa.C.S.A. § 7305.[1] ***See*** Petition for Appointment of Independent Accountant/Arbitrator (the "Petition"), 8/23/17, at ¶¶ 7-17. In particular, Seller alleged that Buyer issued an untimely notice of PPA to Seller and that "[p]ursuant to Section 2.2.3 of the Agreement, [Seller] served [Buyer] with a

---

[1] Section 7305 of the Act provides:

If the agreement to arbitrate prescribes a method of appointment of arbitrators, the prescribed method shall be followed. In the absence of a prescribed method or if the prescribed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act or is unable to act and his successor has not been appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of an arbitrator specifically named in the agreement.

42 Pa.C.S.A. § 7305.

[n]otice of [d]isagreement to the proposed purchase price adjustment". ***Id.*** at ¶¶ 6-7.  Seller alleged that Section 2.2.3 of the Agreement calls for the appointment of an independent accounting firm, as agreed upon by the parties, to resolve any PPA disagreement.  ***See id.*** at ¶ 10.  However, Seller alleged that the parties "have not been able to agree upon an accounting firm to resolve the dispute between the parties." ***Id.*** at ¶ 14.  Finally, Seller alleged that "[u]nder the Agreement, the accounting firm serves as the function of an arbitrator." ***Id.*** at ¶ 15.  Based on its allegations, Seller requested that the trial court issue an order "appointing an independent and objective accounting firm to serve as if appointed by the parties in accordance with the provisions of the Agreement." ***Id.*** at 3.  The Petition was docketed at 17-16574 ("Docket 1").

On October 3, 2017, Buyer filed a complaint against Seller.  The next day, on October 4, 2017, Buyer filed an amended complaint, asserting claims for breach of contract and seeking injunctive and declaratory relief.[2]  At the core of Buyer's complaint lies its allegation that Seller failed to comply with Section 2.2.3 of the Agreement by failing to negotiate in good faith with Buyer to appoint an independent and impartial accountant.  ***See*** Amended Complaint, 10/16/17, at ¶¶ 59-67.  Specifically, and among other things, Buyer alleged that Seller "baselessly declared an impasse, stonewalled,

---

[2] Buyer's other breach of contract claim pertaining to Seller's alleged use of a business name confusingly similar to "The Rose Corporation" in violation of the Agreement is not presently before us, as that issue is currently pending in the trial court.

sought to circumvent the [Agreement] and its duties under it by claiming a right to 'arbitrate' when none existed, and refused to agree in writing to the selection of an independent accountant." *Id.* at ¶ 70. Nonetheless, Buyer requested as relief, *inter alia*, that the trial court appoint "one of the independent accountants identified and proposed to [Seller], or, ***alternatively, that [Buyer] and [Seller] each be directed to select one independent accountant and each to jointly agree on a third accountant*** (to serve individually or on a panel of three)." *Id.* at 14 (emphasis added). Buyer's complaint was docketed at 17-18175 ("Docket 2").

On October 16, 2017, Buyer filed an answer and new matter to Seller's Petition, wherein it specifically noted that Seller failed to negotiate in good faith to select a mutually agreeable independent accountant under the terms of the Agreement. Answer to the Petition, 10/16/17, at ¶¶ 9-14. Buyer also denied that the Agreement "calls for an 'arbitrator.'" *Id.* at ¶ 17.

On the same day and concurrently with its answer, Buyer also filed preliminary objections to the Petition, wherein Buyer alleged that the Agreement did not contain an arbitration provision. *See* Buyer's Preliminary Objections to the Petition, 10/16/17, at ¶¶ 1-8 ("The parties nowhere in their 35-page contract agreed to arbitration"); *see also id.* at ¶ 22 ("The parties did not bargain for an arbitrator and nowhere include that word in their agreement with regard to their obligations to one another."). Accordingly,

Buyer requested that the Petition be dismissed for legal insufficiency because Seller's claim rested on a non-existent contractual duty. *Id.* at ¶¶ 30-35.

On October 20, 2017, based on the parties' stipulation to the relief requested in Buyer's October 4, 2017 "petition for consolidation," the trial court ordered that Docket 1 and Docket 2 be consolidated.

On November 13, 2017, Seller filed preliminary objections to Buyer's amended complaint, noting that Seller did not dispute Buyer's calculation of the proposed PPA amount. *See* Seller's Preliminary Objections to Amended Complaint, 11/13/17, at ¶ 8. In seeking the dismissal of Buyer's amended complaint, Seller asserted that Buyer did not cite any provision of the Agreement that justifies the relief requested by Buyer, *i.e.*, the appointment of an accountant. *Id.* at ¶¶ 10-11. Also, on November 13, 2017, Seller filed a preliminary objection to Buyer's preliminary objections to the Petition, asserting that because Buyer "has already answered the Petition, [Buyer] has waived any preliminary objections." *See* Seller's Preliminary Objections to Buyer's Preliminary Objections to the Petition, 11/13/17, at ¶ 4. On December 4, 2017, Buyer filed a second amended complaint.

On December 19, 2017, the trial court issued the following order:

[U]pon the Petition by [Seller], and the responses thereto by [Buyer], and preliminary objections thereto and oral argument thereon, it is hereby ORDERED that each party shall select an accountant, and those accountants shall agree on a third-party, independent accountant to act individually and in accordance with the parties' contract.

Trial Court Order, 12/19/17 (unnecessary capitalization omitted).[3] The trial court also overruled Seller's preliminary objections to Buyer's preliminary objections to the Petition. *Id.* Finally, the trial court **sustained** Buyer's preliminary objections to the Petition that asserted the Agreement did not call for an arbitrator. *Id.*

On December 27, 2017, Seller filed preliminary objections in the nature of a demurrer to Buyer's second amended complaint.

On January 24, 2018, more than thirty days following the issuance of the trial court's December 19, 2017 order directing the selection of accountants, Seller filed a praecipe to discontinue its action at Docket 1, *i.e.*, the Petition, which sought the appointment of an accounting firm.

On January 24, 2018, Seller filed a complaint against Buyer, docketed at 18-885 ("Docket 3"), asserting claims for breach of contract and unjust enrichment. Seller alleged that, on December 28, 2016, Buyer delivered its proposed PPA of $601,438.00 to Seller and that Seller did not disagree with Buyer's PPA calculation. **See** Seller's Complaint, 1/24/18, at ¶¶ 64-65. As a result, Seller argued that Buyer's proposed PPA of $601,438.00 became final and binding upon the parties. *Id.* at ¶ 66.

---

[3] Although Section 2.2.3 of the Agreement provides for the appointment of **an** independent accounting firm, the parties never appealed the December 19, 2017 order sustaining Buyer's preliminary objections to the Petition and directing the parties to **each** select an accountant and for those to then select a third. We, however, decline to resolve this issue, as it is not presently before us.

A day after Seller discontinued the action at Docket 1, on January 25, 2018, the trial court granted in part and denied in part Seller's request to reconsider the court's December 19, 2017 order directing the selection of accountants. Specifically, the court granted reconsideration only with respect to the issue of attorney's fees, but denied it in all other aspects.

On February 21, 2018, the trial court overruled Seller's preliminary objections to Buyer's second amended complaint (Docket 2), which alleged breach of contract and sought declaratory and injunctive relief.

On the same day, Buyer filed the instant preliminary objections to Seller's complaint (Docket 3) that sought to enforce Buyer's proposed PPA of $601,438.00, arguing, *inter alia*, that Seller was "legally barred by its own previous petition which sought [the appointment of an accounting firm] and resulted in relief contradictory to what it now seeks." Buyer's Preliminary Objections to Seller's Complaint, 2/21/18, at ¶ 9. Specifically, Buyer asserted the doctrine of judicial estoppel in objecting to Seller's refusal to submit the PPA dispute before an independent accountant based on Seller's allegation that it did not disagree with Buyer's proposed PPA calculation. *Id.* at ¶ 10. Additionally, Buyer alleged that, contrary to Seller's claim, Buyer did not provide a proposed PPA calculation to Seller on December 28, 2016. *Id.* at ¶¶ 3-4. In fact, Buyer alleged that it provided a proposed PPA calculation to Seller on April 21, 2017,[4] and that Seller issued a notice of disagreement

---

[4] We observe that Buyer provided the proposed PPA more than thirty days after the December 1, 2016 closing.

thereto on May 3, 2017. *Id.* at ¶ 8. Thus, Buyer urged the trial court to take judicial notice of Seller's admission, as contained in the Petition, that Seller had sent a notice of disagreement to Buyer following Seller's receipt of the proposed PPA calculation. *Id.* Finally and most importantly, Buyer asserted that Seller's complaint be dismissed for legal insufficiency under Pa.R.C.P. No. 1028(a)(4) because the Agreement required the parties to submit their dispute to an independent accountant.[5] *Id.* at ¶ 20.

On March 8, 2018, Buyer petitioned the trial court to consolidate Docket 2 and Docket 3, which the trial court granted on March 27, 2018.

On March 13, 2018, Seller filed an answer and new matter to Buyer's second amended complaint. In its answer, Seller once again asserted that Buyer issued a proposed PPA calculation of $601,438.00 on December 28, 2016 with which Seller did not disagree. Likewise, on March 13, 2018, Seller filed an answer to Buyer's preliminary objections to Seller's complaint, denying Buyer's allegations. On August 23, 2018, and noting only Docket 3 (Seller's complaint) in the caption of its order, the trial court overruled Buyer's preliminary objections to Seller's complaint and directed Buyer to file an

---

[5] We note that Buyer did not assert dismissal of Seller's complaint under Pa.R.C.P. No. 1028(a)(6), relating to agreement for alternative dispute resolution. Differently put, Buyer did not assert preliminary objections in the nature of petition to compel arbitration. Nonetheless, given the relief requested, *i.e.*, referral of the PPA dispute to an independent accountant consistent with Section 2.2.3 of the Agreement, we conclude that Buyer, in essence, sought to compel arbitration.

answer within thirty days. On August 27, 2018, Buyer appealed.[6] The trial

court ordered Buyer to file a Pa.R.A.P. 1925(b) statement of errors complained

of on appeal. Buyer complied, raising a single assertion of error:

> The trial court erred in overruling the preliminary objections of [Buyer] to [Seller's] complaint where (a) each of [Seller's] claims is subject to binding alternative dispute resolution before an accountant, to be mutually selected by the parties, pursuant to the [Agreement]; (b) [Seller] is judicially estopped from pursuing its claims other than through alternative dispute resolution by an accountant in light of its previous petition for appointment of an accountant; and (c) [Seller's] petition for appointment of an accountant and related representations constituted a judicial admission that its claims are subject to binding alternative dispute resolution before an accountant.

Rule 1925(b) Statement, 9/24/18, 1-2 (unnumbered) (unnecessary

capitalization omitted). In response, the trial court issued a Pa.R.A.P. 1925(a)

opinion, determining that Section 2.2.3 of the Agreement was an arbitration

provision. In this regard, the court found that "[g]iven the detailed provisions

governing recourse to an independent accountant in this case, including

written and in-person presentation of positions and the ability to enter the

accountant's determination as a judgment, it stands to reason that the

independent accountant option here should be treated as an arbitration

---

[6] Our review of Docket 2 and Docket 3 indicates that the order overruling Buyer's preliminary objections to Seller's complaint was recorded only on Docket 3. Nonetheless, presumably out of an abundance of caution, Buyer filed two separate notices of appeal, one at Docket 2 and the other at Docket 3. **See Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that, for any appeal filed after June 1, 2018, "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed" in each case; "[t]he failure to do so will result in quashal of the appeal") (footnote omitted).

provision." Trial Court Opinion, 11/13/18, at 6. Nonetheless, the trial court concluded that a factual dispute existed with respect to whether Seller ever issued a notice of disagreement to Buyer's notice of PPA to trigger the dispute resolution provision of Section 2.2.3 of the Agreement. As a result, the trial court determined that it did not abuse its discretion in overruling Buyer's preliminary objections to Seller's complaint at this procedural juncture and declining to transfer the dispute to an independent accountant.

On appeal, Buyer presents the following issue for our review.

> [I.] Did the trial court err in holding that the parties' dispute is not within the scope of their agreement for alternative dispute resolution, where the trial court's finding disregards the Commonwealth's policy preference for alternative dispute resolution, fails to give effect to the parties' intent as expressed in their agreement, and ignores that there is no factual dispute in light of [Seller's] prior judicial admissions that the dispute should be submitted to resolution by an independent accountant?

Buyer's Brief at 3 (unnecessary capitalization omitted).[7]

Before we may address the merits of Buyer's issue, we first must determine whether we have jurisdiction to entertain this appeal, given the manner by which Buyer has come to this Court. *See LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986) (noting a court may raise the issue of subject matter jurisdiction at any time); *accord Cont'l Bank v. Andrew Bldg. Co.*, 648 A.2d 551, 553 (Pa. Super. 1994).

---

[7] Based on the outcome of this case, we need not address Buyer's argument that Seller is barred by its own judicial admission from asserting that Seller never issued a notice of disagreement upon its receipt of the proposed PPA calculation from Buyer.

In its brief, Buyer claims that this Court may exercise its appellate jurisdiction by virtue of Pa.R.A.P. 311(a)(8) and Sections 7320(a)(1) and 7342(a) of the Act, 42 Pa.C.S.A. §§ 7320(a)(1), and 7342(a). *See* Buyer's Brief at 1 (unpaginated). We agree.

As a general rule:

An order overruling preliminary objections is interlocutory and not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which appeal is taken from an order denying a petition to compel arbitration. Our decision law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court.

*Griest v. Griest*, 183 A.3d 1015, 1021-22 (Pa. Super. 2018) (citations, quotation marks and brackets omitted). It is well-settled that "[u]nder Pennsylvania law, an appeal may only be taken from an interlocutory order as of right (Pa.R.A.P. 311), from a final order (Pa.R.A.P. 341), from a collateral order (Pa.R.A.P. 313), or from any interlocutory order by permission (Pa.R.A.P. 31[2], [Pa.R.A.P.] 1311, 42 Pa.C.S.A. § 702(b))." *Cont'l Bank*, 648 A.2d at 553. Buyer here argues jurisdiction only on the basis of Rule 311, which enumerates several categories of interlocutory orders that are appealable as of right. Specifically at issue here is Rule 311(a)(8), which provides:

**(a) General rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

. . . .

(8) *Other cases*. An order which is made **appealable by statute** or general rule.

Pa.R.A.P. 311(a)(8) (emphasis added). Buyer claims only that, under Rule 311(a)(8), the order *sub judice* is rendered appealable by Sections 7320(a)(1) and 7342(a) of the Act. Section 7320(a)(1) of the Act provides that "[a]n appeal may be taken from . . . [a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration)." 42 Pa.C.S.A. § 7320(a)(1). Section 7342(a), relating to common law arbitration, provides, *inter alia*, that Section 7320(a) of the Act, except subsection (a)(4), is applicable also to common law arbitration. **See** 42 Pa.C.S.A. § 7342(a).

To render an order overruling preliminary objections seeking to compel arbitration appealable under the Act, a party must prove that the dispute is bound by an arbitration agreement, which calls for either statutory or common law arbitration. **Armstrong v. Travelers Ins. Co.**, 115 A.3d 342, 345 (Pa. Super. 2015), **appeal denied**, 128 A.3d 218 (Pa. 2015). Unless an arbitration agreement expressly provides for statutory arbitration, the law presumes that the parties intended to submit their disputes to common law arbitration. **See Derry Twp. Mun. Auth. v. Solomon & Davis, Inc.**, 539 A.2d 405, 410 (Pa. Super. 1988) ("Because the arbitration provision contained in Derry's contracts with Solomon does not expressly provide for statutory arbitration, the agreement does not overcome the presumption that the controversy will be governed by the rules pertaining to common law arbitration."). Indeed, Section 7302 of the Act provides:

- 13 -

> *An agreement to arbitrate* a controversy on a nonjudicial basis *shall be conclusively presumed* to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) *unless* the agreement to arbitrate is in writing and *expressly provides* for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter.

42 Pa.C.S.A. 7302 (emphasis added).

With these principles in mind, we conclude that the Section 2.2.3 of the Agreement contains a common law arbitration provision, even though the provision does not contain the terms "arbitration" and "arbitrator."[8]  As previously noted, Section 2.2.3 of the Agreement provides in part:

> If at the end of such thirty (30) day period the Buyer and Seller have not resolved in writing the matters specified in the Notice of Disagreement, Buyer and Seller *shall submit* to an independent accounting firm (the Accounting Firm), *as shall be agreed upon by Buyer and Seller in writing, for determination of the Purchase Price Adjustment*.  . . .  The Accounting Firm *will resolve the dispute pursuant to such procedures that it establishes and deems fair and equitable*, provided that Buyer and Seller must each be afforded an opportunity to provide a written submission in support of its position and to advocate for its position personally before the Accounting Firm.  *Judgment may be entered upon the determination of the Accounting Firm in any court having jurisdiction over the party against which such determination is to be enforced*.

---

[8] Moreover, as we noted earlier, Buyer's preliminary objections to Seller's complaint sought to transfer the PPA dispute to an independent accountant under Section 2.2.3 of the Agreement.

The Agreement, 11/4/16, at ¶ 2.2.3 (emphasis added). Section 2.2.3 of the Agreement expressly provides that if the parties are unable to resolve their PPA dispute amicably and in writing within thirty days, then they shall submit the dispute to a jointly-selected independent accounting firm.[9] Critically, the accounting firm is to resolve the parties' dispute, employing procedures that the accounting firm establishes so long as they are fair and equitable to both parties. Section 2.2.3 of the Agreement also requires that the parties be afforded an opportunity to provide written submissions to, and appear personally before, the accounting firm to advocate the parties' respective positions. Finally, the Agreement contemplates that the independent accounting firm's determinations regarding the PPA, upon which judgment may be entered in any court having jurisdiction over the non-prevailing party, is final and binding upon the parties. Thus, given the essence of Section 2.2.3 of the Agreement, it is clear that it provides for arbitration, even in the absence of the terms "arbitration" or "arbitrator."[10] Section 2.2.3 contains

---

[9] We use the terms "accounting firm" and "accountant" interchangeably throughout this decision.

[10] On this point, we find instructive and persuasive a number of state court and federal district court decisions. *See Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 397 (Del. 2010) ("We do not require the magic word, 'arbitration,' to find that parties intended to arbitrate."); *2200 M St. LLC v. Mackell*, 940 A.2d 143, 151 (D.C. 2007) ("Because "agreement to have third parties decide disputes [is] the essence of arbitration, no magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of [an arbitration clause]); *Yeransian v. Markel Corp.*, 2017 WL 3225987 (D. Del. July 21, 2017) ("While not a traditional arbitration agreement—in that it never mentions an arbitrator or

sufficient hallmarks inherent to an arbitration proceeding.[11]   Accordingly,

because Section 2.2.3 is an arbitration provision within the meaning of

the term arbitrate—Section 3.2(d) of the [Contingent Value Rights Agreement] is still a contractually agreed upon dispute resolution process by which an Independent Actuary determines the final and binding Adjusted Principal Amount."); ***Seed Holdings, Inc. v. Jiffy Int'l AS***, 5 F. Supp. 3d 565, 576 (S.D.N.Y. 2014) ("While Section 2.8 does not use the term 'arbitration,' it requires the parties to submit their dispute with respect to working capital 'to the binding determination of a third party accounting firm.'"); ***Wolsey, Ltd. v. Foodmaker, Inc.***, 144 F.3d 1205, 1208 (9th Cir. 1998) (Noting that "[n]o magic words such as "arbitrate" or "binding arbitration" or "final dispute resolution" are needed to obtain the benefits of [the Federal Arbitration Act]"); ***accord AMF Inc. v. Brunswick Corp.***, 621 F. Supp. 456, 460 (E.D.N.Y. 1985); ***McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.***, 858 F.2d 825, 830 (2d Cir. 1988) (citing with approval cases where submission of disputes to independent appraisers and accountants qualified as arbitrations).

[11] "Arbitration is a term that eludes easy definition." ***AMF Inc.***, 621 F. Supp. at 459.  Indeed, the Act does not define the term "arbitration."  The term, however, is defined in the Black's Law Dictionary as "[a] method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding."  Black's Law Dictionary (9th ed. 2009).  *Webster's Third New International Dictionary* defines "arbitration" as "the hearing and determination of a case between parties in controversy by a person or persons chosen by the parties or appointed under statutory authority instead of by a judicial tribunal provided by law."  *Webster's Third New International Dictionary*, 110 (3d ed.1993).  In ***AMF Inc.***, the court noted that Arbitration is a creature of contract, a device of the parties rather than the judicial process.  If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.  621 F. Supp. at 460.  "The arbitrator's decision need not be binding in the same sense that a judicial decision needs to be to satisfy the constitutional requirement of a justiciable case or controversy." ***Id.***

Sections 7320(a)(1) and 7342(a), we conclude that Buyer may invoke Rule 311(a)(8) to implicate the jurisdiction of this Court.[12]

Having concluded that we properly may exercise jurisdiction *sub judice*, we now turn to the merits of the issue on appeal. Distilled to its essence, Buyer principally argues that the trial court erred in deciding a question of procedural arbitrability, when such a question should have been reserved for the arbitrator. *See* Buyer's Brief at 25-29. Consequently, Buyer argues that the trial court abused its discretion in overruling its preliminary objection in the nature of a petition to compel arbitration.[13] We agree.

The relevant standard and scope of review in this context are as follows:

> Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. In doing so, we employ a two-part test to determine

---

[12] Buyer had to file an appeal to preserve its objections to the order. *See* Pa.R.A.P. 311(g)(1)(iv) ("Failure to file an appeal from an interlocutory order refusing to compel arbitration, appealable under 42 Pa.C.S.A. § 7320(a)(1) and subparagraph (a)(8) of this rule, shall constitute a waiver of all objections to such an order.").

[13] To the extent Seller invites us to quash Buyer's appeal based on judicial estoppel or Buyer's seeming acquiescence to the trial court's jurisdiction, we decline the invitation. Seller raises for the first time on appeal the argument that Buyer is judicially estopped from arguing that the Agreement contains an arbitration provision or that Buyer has consented to the trial court's jurisdiction by participating in this litigation. Differently put, because Seller did not raise these issues in its answer to Buyer's preliminary objections to Seller's complaint, or at any other time before the trial court, Seller has waived them. *See* Pa.R.A.P. 301(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

- 17 -

whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. In making these determinations, courts must bear in mind: (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*Griest*, 183 A.3d at 1022 (citations and quotation marks omitted).

"Pennsylvania has a well-established public policy that favors arbitration[.]"

*MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209,

1219 (Pa. Super. 2015) (*en banc*) (citation omitted). In light of this policy

and as mentioned previously, "we employ a two-part test to determine

whether the trial court should have compelled arbitration." *Id.* (citation

omitted). First, there must be a valid agreement between the parties to

arbitrate. *Id.* Second, the parties' dispute must fall within the scope of the

agreement."[14] *Id.* If the two-part test results in affirmative answers, then "the controversy must be submitted to arbitration." *Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 182 (Pa. Super. 2018) (citation omitted). The resolution of the two-part test implicates substantive arbitrability, over which the courts have jurisdiction. *See Ross Dev. Co. v. Advanced Bldg. Dev., Inc.*, 803 A.2d 194, 199 (Pa. Super. 2002) (holding that courts, not arbitrators, must decide questions of substantive arbitrability such as whether there is a valid agreement to arbitrate and whether disputed claim is within scope of agreement).

If, however, a trial court concludes that arbitration is not warranted because of a party's failure to satisfy certain conditions precedent necessary to trigger arbitration, such a conclusion is in error. It is established that "the question of substantive arbitration is for the courts while procedural arbitration is left to the arbitrators." *Ross*, 803 A.2d at 197. Procedural arbitration subsumes issues relating to the satisfaction of conditions precedent to arbitration.[15] *See id.* at ("[T]he threshold issue of whether the failure to meet

---

[14] "Whether a dispute is within the scope of an arbitration agreement is a question of law for which our scope of review is plenary." *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 471 (Pa. Super. 2017).

[15] By way of background, the leading United States Supreme Court case on procedural arbitrability is *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). There, the Court explained the practical and policy reasons to separate procedural arbitrability from substantive arbitrability. *See id.* at 561-64 ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions

time limitations for submission of these claims to the architect is a condition precedent for proceeding to arbitration is an issue for the arbitrators to initially decide.").

Here, the parties do not appear to dispute that the two-part test has been satisfied, and we agree.[16] As we have detailed above, Section 2.2.3 is indeed an arbitration provision, even in the absence of the terms "arbitration" or "arbitrator." Furthermore, given the plain language of Section 2.2.3, the parties' dispute about the proposed PPA calculation squarely falls within the scope of Section 2.2.3 of the Agreement, which expressly and only pertains to the PPA.

> The Proposed Purchase Price shall become final and binding upon the parties on the thirtieth (30th) day following the date on which the **Proposed Purchase Price Adjustment** was given to Seller in accordance with Section 12.7 below, unless Seller delivers

---

which grow out of the dispute and bear on its final disposition should be left to the arbitrator."). The Supreme Court reiterated this distinction in ***Howsam v. Dean Witters Reynolds, Inc.***, 537 U.S. 79 (2002). Substantive arbitrability issues are gateway questions about the scope of an arbitration provision and its applicability to a given dispute. ***Id.*** There is a presumption that the parties intended courts to decide issues of substantive arbitrability, that is, whether the provision covers the dispute. ***Id.*** at 82. The opposite presumption, however, applies to procedural arbitrability issues, such as waiver, or satisfaction of conditions precedent to arbitration. ***Id.*** at 83. That is, the parties presume that the arbitrator will decide these issues, and if a court decides them, the court commits reversible error. ***See id.***

[16] Seller does not argue that Section 2.2.3 of the Agreement is an arbitration provision or that the PPA dispute would not be subject to Section 2.2.3. Rather, Seller contends that Buyer is judicially estopped from asserting that Section 2.2.3 is an arbitration provision and that Seller never issued a notice of disagreement to activate the appointment of an independent accounting firm under Section 2.2.3 of the Agreement.

written notice of its disagreement with **the Proposed Purchase Price Adjustment** ("Notice of Disagreement") to Buyer prior to such date. . . .  If at the end of such thirty (30) day period the Buyer and Seller have not resolved in writing the matters specified in the Notice of Disagreement, Buyer and Seller shall submit to an independent accounting firm (the Accounting Firm), **as shall be agreed upon by Buyer and Seller in writing, for determination of the Purchase Price Adjustment**. . . .  The Accounting Firm will resolve the dispute pursuant to such procedures that it establishes and deems fair and equitable, provided that Buyer and Seller must each be afforded an opportunity to provide a written submission in support of its position and to advocate for its position personally before the Accounting Firm.  Judgment may be entered upon the determination of the Accounting Firm in any court having jurisdiction over the party against which such determination is to be enforced.

The Agreement, 11/4/16, at ¶ 2.2.3 (emphasis added).  Based on the foregoing, Section 2.2.3 of the Agreement contains an arbitration provision, which covers the parties' dispute relating to the PPA calculation.

Yet, the trial court reached an opposite conclusion with respect to whether the parties' PPA dispute fell within Section 2.2.3 of the Agreement. In so doing, as Buyer points out, the trial court conflated the concepts of substantive and procedural arbitrability.  The court reasoned the PPA dispute fell outside of the scope of Section 2.2.3 because it was unclear whether Seller triggered the arbitration provision of Section 2.2.3 by issuing a notice of disagreement.  However, as mentioned earlier, the question of whether a condition precedent to arbitration, such as a notice of disagreement here, has been satisfied implicates procedural arbitrability, which is to be determined by an arbitrator.

In **Ross**, the appellant argued that once the trial court affirmatively addressed questions of substantive arbitrability, it erred in resolving the issue of whether the appellant had satisfied a condition precedent to arbitration, *i.e.*, submission of the appellant's claim to an architect, under an arbitration provision. On appeal, we agreed. In so doing, we noted:

> [s]ince 1980, there has been a long line of cases that hold that if it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure, including requirements preliminary to the presentation of any claims, are for the arbitrators to resolve.

**Ross**, 803 A.2d at 198-99 (citations omitted). We ultimately concluded that the trial court may only address questions of substantive arbitrability such as whether there is a valid arbitration agreement and whether the disputed claim is within the scope of that agreement. **Id.** at 199. Because the trial court ruled on a question of procedural arbitrability, such as timeliness in invoking the arbitration clause and the merits of the dispute, we held that it "invaded the province of the arbitrators when it considered questions of procedural arbitrability." **Id.**

Consistent with **Ross** and the foregoing authorities, we are constrained to conclude that the trial court erred in failing to transfer the parties' PPA dispute to an independent accountant. Our review of the record reveals the trial court decided an issue of procedural arbitrability, **see** Trial Court Opinon, 11/13/18, at 8 ("[I]t certainly appears that the independent accountant process goes into effect only when there is a notice of disagreement."), when

- 22 -

it determined that it was unclear from the record whether Seller issued a notice of disagreement sufficient to trigger the appointment of an accountant under Section 2.2.3 of the Agreement. In so determining, the trial court invaded the province of the arbitrator, tasked with resolving questions of procedural arbitrability. Again, because the parties agreed to arbitration (appointment of an independent accountant) under Section 2.2.3 of the Agreement, which applies to their PPA dispute, it was an error for the trial court to address procedural arbitrability. Accordingly, we conclude that the trial court abused its discretion in overruling Buyer's preliminary objections to Seller's complaint and failing to transfer the dispute to an independent accountant.[17, 18]

Order reversed. Cased remanded. Jurisdiction relinquished.

_____

[17] "Typically, a trial court's order directing a dispute to arbitration will not be deemed final, as it does not address the merits of the parties' claims but merely transfers their existing dispute to another forum in accordance with the arbitration provision of the underlying contract." **Fastuco v. L.W. Molnar & Assocs.**, 950 A.2d 980, 986 (Pa. Super. 2008) (citation omitted).

[18] Although we discuss Dockets 1 and 2 for purposes of providing a complete picture of the PPA dispute at issue, we note that our decision relates only to Docket 3 and does not affect the procedural posture of the Petition (Docket 1) or Buyer's complaint (Docket 2).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2019