J-A17007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MACKIN MEDICAL, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINDQUIST & VENNUM LLP D/B/A | : | |
| LINDQUIST & VENNUM D/B/A | : | |
| LINDQUIST & VENNUM P.L.L.P.; | : | No. 1817 EDA 2018 |
| MARK A. JACOBSON, ESQUIRE; | : | |
| MARK PRIVRATSKY, ESQUIRE; | : | |
| CHRISTOPHER SMITH, ESQUIRE; | : | |
| BALLARD SPAHR ANDREWS & | : | |
| INGERSOLL LLP D/B/A BALLARD | : | |
| SPAHR | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered June 4, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  February Term, 2018 No. 4

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 06, 2020**

Lindquist & Vennum, LLP, *et al.* (hereinafter "Appellant"),[1] appeals from

the order entered on June 4, 2018, which overruled its preliminary objection

to compel arbitration.  We vacate and remand.

Mackin Medical, Inc. ("Mackin Medical") retained Appellant as legal

counsel to represent it on certain matters.  As the trial court explained:

---

[1] Although there are multiple named appellants, for ease of understanding we
will refer to the appellants as a singular "Appellant" throughout this
memorandum.

On December 11, 2013, [Appellant] sent a letter to Mackin Medical setting the scope and terms of its engagement . . . as follows:

> **Scope of Our Engagement.**  You have retained the Firm to represent Mackin Medical in connection with antitrust and competition issues.  While the Firm is available to work with you on a wide range of other matters, this will confirm that our engagement at this point is limited to the performance of services solely in the matter described above.

[Appellant] attached and incorporated to its retainer letter a document titled "Engagement Terms and Policies."  This [document] includes the following dispute resolution provision:

> [**Dispute Resolution.**  Although we look forward to a mutually rewarding relationship, in the unlikely event of a dispute, including a dispute regarding the amount or payment of fees and expenses we may have a duty or the right to withdraw from representation as provided by the applicable rules of professional conduct.]  In the event of a dispute, controversy or claim arising out of or relating to our fees, costs, billing practices or this engagement, we mutually agree that any such dispute, controversy or claim will be submitted to mandatory binding arbitration before a single arbitrator in Minneapolis, Minnesota, in an arbitration administered by the American Arbitration Association [("AAA")] under its Commercial Arbitration Rules.  The decision of the arbitrator will be final and binding on the parties.  Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  Arbitration has the advantage of generally being faster, less expensive and more informal than traditional litigation and any decision is final and binding.  It does not provide, however, for the assurance of as much pre-hearing discovery, public trial by jury, or appeal.  Arbitration filing fees are typically more expensive, and the parties are responsible for paying the arbitrator.  Your signature on the accompanying engagement letter acknowledges your informed consent to use of arbitration to resolve disputes with us.

. . .

On December 12, 2013, Mackin Medical executed the retainer letter with its incorporated engagement terms without independent counsel review.

Trial Court Opinion, 12/26/18, at 2-3 (footnote omitted).

On February 2, 2018, Mackin Medical filed a complaint against Appellant in the Court of Common Pleas of Philadelphia County, alleging that Appellant was professionally negligent in advising and representing Mackin Medical. Within the complaint, Mackin Medical averred:

20. At all relevant times, Mackin Medical was in the business of renting medical equipment and devices including GreenLight™ Lasers to hospitals, doctors and trained medical professionals.

21. Before December 2013, Mackin Medical purchased GreenLight™ lasers to rent to medical providers and did so pursuant to a "Mobile Provider Distribution Agreement" ("the Agreement") with the GreenLight™ Laser patent owner, AMS.

22. Though the physical GreenLight™ lasers were owned outright by Mackin Medical, each instance of operation of the lasers required a one-time-use GreenLight™ Fiber Units and one-time-use software cards.

23. The terms of the Agreement provided that both the Fiber Units and software cards were not owned outright by Mackin Medical, but rather were subject to a limited license from AMS and subject to certain conditions.

24. In December 2013, following a request by AMS to amend [] the terms of the Agreement, Mackin Medical retained [Appellant] to provide legal counsel regarding the Agreement to represent its interest in any contract negotiations with AMS.

25. Though [Appellant] attempted to re-negotiate the terms of the Agreement, they were ultimately unsuccessful and the contract was terminated with AMS.

26. [Appellant] advised Mackin Medical it was free to continue to rent out the GreenLight™ laser technology owned by Mackin Medical without any contractual Agreement with AMS, provided that no GreenLight™ or AMS trademarks were used or referenced.

27. Relying on this advice, Mackin Medical continued to rent out the GreenLight™ lasers to its customers in 2014 through August [] 2016 without any contractual Agreement with [AMS] rather than selling the GreenLight™ lasers outright.

Mackin Medical's Complaint, 2/2/18, at ¶¶ 20-27.

As Mackin Medical alleged, Appellant's advice – that Mackin Medical may continue renting the GreenLight lasers – was professionally negligent and caused it harm. *Id.* at ¶¶ 41-48.

Appellant filed preliminary objections to the complaint and sought to compel arbitration, in accordance with the arbitration provision contained in the retainer agreement. *See* Appellant's Preliminary Objections, 4/5/18, at 1-8. Mackin Medical answered Appellant's preliminary objections and claimed: the arbitration provision is invalid and unenforceable because Mackin Medical was not "fully informed of the scope and effect of the agreement;" the arbitration provision is invalid and unenforceable because a confidential relationship exists between Mackin Medical and Appellant and there is no evidence that Mackin Medical agreed to the provision "with an understanding and knowledge of its nature, terms and consequences;" the arbitration provision is invalid and unenforceable because it violates Pennsylvania Rule of

Professional Conduct 1.8; and, even if the provision were enforceable, the provision is ambiguous as to whether it encompasses legal malpractice claims and, under our canons of construction, the current matter must be viewed as falling outside the scope of the provision. **See** Mackin Medical's Answer to Preliminary Objections, 4/20/18, 1-7; Mackin Medical's Memorandum of Law in Opposition to Appellant's Preliminary Objections, 4/20/18, at 1-17.

Neither Appellant nor Mackin Medical sought discovery or a hearing on the issues and no discovery or hearing on the preliminary objections took place.

On June 4, 2018, the trial court overruled Appellant's preliminary objections. Within its order, the trial court ruled that there was an ambiguity as to whether the arbitration provision applied to a legal malpractice claim; and, since Appellant drafted the agreement, the trial court held that the ambiguity must be construed against Appellant. **See** Trial Court Order, 6/4/18, at 1; **but see Provenzano v. Ohio Valley Gen. Hosp.**, 121 A.3d 1085, 1096-1097 (Pa. Super. 2015) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quotations and citations omitted).

Appellant filed a timely notice of appeal.[2] Within the trial court's subsequent Rule 1925(a) opinion, the trial court seemingly abandoned its

_____

[2] "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42

- 5 -

"ambiguity" justification and, instead, reasoned that it was required to overrule Appellant's preliminary objections because the arbitration provision violated both Pennsylvania Rule of Professional Conduct 1.8(h)(1) and 1.8(a)(1). The trial court declared:

> [an o]bjective reading of [Appellant's] retainer letter and its incorporated engagement terms compels a finding that the law firm failed to reasonably disclose the prospective limitations the firm was placing on its own liability for malpractice. This is because the retainer and its incorporated terms violate both [Pennsylvania Rule of Professional Conduct] 1.8(h)(1) and [] 1.8(a)(1), the latter providing: "A lawyer shall not enter into a business transaction with a client . . . unless . . . the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner that can reasonably be understood by the client."

Trial Court Opinion, 12/26/18, at 6.

Appellant raises three claims in its brief:

> 1. Did the trial court err in holding that an arbitration provision in a lawyer's engagement agreement with a client is a prospective limitation on the lawyer's malpractice liability that is "substantively unconscionable" and in violation of Rules 1.8(h)(1) and 1.8(a)(1) of the Pennsylvania Rules of Professional Conduct?
>
> 2. Does the Federal Arbitration Act [("FAA")], which requires enforcement of arbitration agreements on an equal footing with all other contracts, preempt the trial court's holding that a lawyer's engagement agreement with a client containing an arbitration clause cannot be enforced unless the lawyer advises the client to consult with independent counsel, where

___

Pa.C.S.A. § 7320(a) and Pa.R.A.P. 311(a)(8)." ***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 46, 49 n.1 (Pa. Super. 2017).

no such requirement exists for the enforcement of an engagement agreement without an arbitration clause?

3. Did the trial court err in holding that the parties' broad arbitration agreement, which encompassed any "dispute, controversy or claim arising out of or relating to . . . this engagement," was ambiguous because it did not explicitly mention "malpractice" or "legal negligence," and did the [trial] court further err in then holding that such asserted ambiguity precluded enforcement of the arbitration agreement?

Appellant's Brief at 4.

We have explained:

Our review of a claim that the trial court improperly [overruled] the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in [overruling the preliminary objections]. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement. . . . If the two-part test results in affirmative answers, then the controversy must be submitted to arbitration. . . .

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. In making these determinations, courts must bear in mind: (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and

- 7 -

ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*TTSP Corp. v. Rose Corp.*, 217 A.3d 1269, 1280 (Pa. Super. 2019) (quotations and citations omitted).

First, Appellant claims that the trial court erred in concluding that the arbitration provision violates Rules 1.8(h)(1) and 1.8(a)(1) of the Pennsylvania Rules of Professional Conduct. We agree.

Pennsylvania Rule of Professional Conduct 1.8(h)(1) provides:

(h) A lawyer shall not

(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement.

Pa.R.P.C. 1.8(h)(1).

Here, the arbitration provision declares that any dispute "arising out of or relating to . . . this engagement . . . will be submitted to mandatory binding arbitration before a single arbitrator . . . in an arbitration administered by the [AAA] under its Commercial Arbitration Rules." Retainer Agreement, Engagement Terms and Policies, at 3. Neither Mackin Medical nor the trial court has provided a cogent argument or claim as to how the AAA's Commercial Arbitration Rules would or could limit Appellant's **liability** to Mackin Medical for malpractice.

To be sure, Rule 47(a) of the AAA's Commercial Arbitration Rules broadly states that the "arbitrator may grant **any remedy or relief that the arbitrator deems just and equitable** and within the scope of the agreement of the parties."  AAA Commercial Arbitration Rules, Rule 47(a) (emphasis added).  Thus, the AAA's Commercial Arbitration Rules do not limit Appellant's potential liability to Mackin Medical.  Instead, the rules provide the arbitrator with the authority to grant "any remedy or relief that the arbitrator deems just and equitable."  Further, nothing in the parties' agreement limits the broad grant of authority to the arbitrator to award "any remedy or relief that the arbitrator deems just and equitable."

Within the trial court's opinion, the trial court reasons that the arbitration provision prospectively limits Appellant's liability to Mackin Medical because "procedural differences exist between courts and [AAA arbitration]."  Trial Court Opinion, 12/26/18, at 6 n.13.  The trial court specifically cites the limited pre-hearing discovery and the limitation on the right of a party to appeal that exist in arbitration proceedings.  *Id.*  However, as the trial court recognizes, these are **procedural** differences between courts and AAA arbitration.  The procedural differences do not, in any way, prospectively limit the substantive scope of Mackin Medical's potential claims against Appellant or limit Appellant's liability to Mackin Medical.  Rather, Appellant's potential liability to Mackin Medical remains subject to the arbitrator's broad power to "grant any remedy or relief that the arbitrator deems just and equitable."  AAA Commercial Arbitration Rules, Rule 47(a).

Thus, we conclude that the trial court's decision in this case directly contravenes the plain language of Pennsylvania Rule of Professional Conduct 1.8(h)(1).

Further, the trial court's decision is contrary to Comment 14 of Rule 1.8. Comment 14 to the rule declares:

> [14] Agreements prospectively limiting a lawyer's liability for malpractice are prohibited unless the client is independently represented in making the agreement because they are likely to undermine competent and diligent representation. Also, many clients are unable to evaluate the desirability of making such an agreement before a dispute has arisen, particularly if they are then represented by the lawyer seeking the agreement. **This paragraph does not, however, prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims**, provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement.

Pa.R.P.C. 1.8 cmt. 14 (emphasis added).

Thus, the comment to Rule 1.8 expressly states that the rule does not "prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement." *Id.* Further, to the extent Mackin Medical claims that it was not "fully informed of the scope and effect of the agreement," that issue implicates Pennsylvania Rule of Professional Conduct 1.4(b) – not 1.8(h)(1).[3] *See* Pa.R.P.C. 1.4(b) ("[a]

---

[3] Moreover, as will be explained below, any claim that Mackin Medical was not "fully informed of the scope and effect of the [arbitration] agreement" fails.

lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation").

We thus conclude that the arbitration provision in this case does not "prospectively limit[ Appellant's] liability to [Mackin Medical] for malpractice." **See** Pa.R.P.C. 1.8(h)(1). Moreover, since the agreement does not prospectively limit Appellant's liability to Mackin Medical, the provision is not unenforceable simply because Mackin Medical was not "independently represented in making the agreement." **See id.** The trial court erred in concluding otherwise.

Appellant also contends that the trial court erred in concluding that the arbitration provision violates Pennsylvania Rule of Professional Conduct 1.8(a)(1).[4] We agree that the trial court erred in this regard.

Rule 1.8(a)(1) declares:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> > (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client.

Pa.R.P.C. 1.8(a)(1).

_____

[4] As explained above, within the trial court opinion, the trial court declared that it overruled Appellant's preliminary objections because the arbitration provision violates both Pennsylvania Rule of Professional Conduct 1.8(h)(1) and 1.8(a)(1).

The arbitration provision in this case is found within a retainer agreement between a lawyer and a client. Simply stated, the retainer agreement does not constitute a "business transaction with a client" pursuant to Rule 1.8(a)(1). ***See***, ***e.g.***, Pa.R.P.C. 1.8 cmt. 1 ("[a] lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer **participates in a business, property or financial transaction with a client, for example, a loan or sales transaction or a lawyer investment on behalf of a client**. . . . **[Rule 1.8] does not apply to ordinary fee arrangements between client and lawyer**, which are governed by Rule 1.5") (emphasis added). Therefore, Rule 1.8(a)(1) does not apply to this dispute.

Next, Appellant contends that the trial court's decision violates the FAA. As the United States Supreme Court has explained:

> The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts. While Congress was no doubt aware that the [FAA] would encourage the expeditious resolution of disputes, its passage was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered. . . . [The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

***Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.***, 489 U.S. 468, 478 (1989) (quotations and citations omitted).

In keeping with this, the Supreme Court held that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA. **Doctor's Assocs., Inc. v. Casarotto**, 517 U.S. 681, 687 (1996). However, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions." **Id.**

Here, the trial court invalidated the arbitration provision based solely upon procedural differences that exist between courts and arbitration. **See** Trial Court Opinion, 12/26/18, at 6 n.13. In doing so, the trial court has "singl[ed] out [this] arbitration provision[]" – and, in effect, all arbitration provisions – "for suspect status" based solely upon procedural differences that exist between adjudication before courts and arbitration. This rationale thwarts the will of Congress and violates the FAA. **See Doctor's Assocs.**, 517 U.S. at 687.

Third, Appellant claims that the trial court erred in ruling that the arbitration provision was ambiguous. We agree.

Within the trial court's initial order in this case, the trial court declared that it was overruling the preliminary objections because there was an ambiguity as to whether the arbitration provision encompassed a legal malpractice claim. According to the trial court, since Appellant drafted the agreement, the ambiguity must be construed against Appellant; the trial court thus held that the provision did not apply to legal malpractice claims. **See** Trial Court Order, 6/4/18, at 1.

- 13 -

Although the trial court later abandoned its "ambiguity" justification in its subsequent Rule 1925(a) opinion, its initial ruling regarding ambiguity was never expressly overruled and is, thus, still present in this case. Therefore, we must address this issue.

The Pennsylvania Supreme Court has explained:

> Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (quotations and citations omitted).

"Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Id.* (quotations and citations omitted); *see also Provenzano*, 121 A.3d at 1096-1097 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quotations and citations omitted).

We conclude that the trial court's determination that the arbitration provision is ambiguous is incorrect and that the arbitration provision unambiguously applies to legal malpractice claims. The arbitration provision plainly declares:

> In the event of a dispute, controversy or claim arising out of or relating to our fees, costs, billing practices or this engagement, we mutually agree that any such dispute,

controversy or claim will be submitted to mandatory binding arbitration.

Retainer Agreement, Engagement Terms and Policies, at 3.

The parties' contract defines the term "engagement" as encompassing "antitrust and competition issues." Retainer Agreement, at 1.

This contractual language is clear and unambiguous. Further, the language obviously encompasses legal malpractice claims, as: a legal malpractice claim is a "claim arising out of or relating to . . . this engagement" and, other than a fee or billing dispute (which are specified in the agreement), a legal malpractice claim is the principal dispute that could "arise out of or relate to" an attorney-client engagement. Thus, the trial court erred in concluding that the arbitration provision was ambiguous.

It is true that "we have the ability to affirm a [trial court's] decision on any grounds that are supported by the record." *Shamis v. Moon*, 81 A.3d 962, 970 (Pa. Super. 2013). However, none of the other arguments proffered by Mackin Medical support the trial court's order in this matter.

First, to the extent Mackin Medical argues that the legal malpractice claim falls outside the scope of the arbitration agreement, this claim fails.

Within its complaint, Mackin Medical claimed that Appellant was professionally negligent in advising that Mackin Medical may continue to rent the GreenLight™ lasers, despite the fact that Mackin Medical did not have a contractual agreement with the GreenLight™ Laser patent owner, AMS, and despite the fact that "each instance of operation of the lasers required a one-time-use GreenLight™ Fiber Units and one-time-use software cards . . .

[, which] were subject to a limited license from AMS and subject to certain conditions." **See** Mackin Medical's Complaint, 2/2/18, at ¶¶ 20-27.

The plain language in Mackin Medical's complaint demonstrates that Mackin Medical's current claim arises out of and relates to the "competition issues" Mackin Medical had with the GreenLight™ Laser patent owner; hence, the claim falls within the scope of the arbitration provision. Retainer Agreement, at 1; Retainer Agreement, Engagement Terms and Policies, at 3.

Second, within Mackin Medical's response in opposition to Appellant's preliminary objections, Mackin Medical claimed that the arbitration provision was invalid and unenforceable because Mackin Medical was not "fully informed of the scope and effect of the agreement." **See** Mackin Medical's Answer to Preliminary Objections, 4/20/18, 1-7. This claim fails.

Mackin Medical's claim stems from Comment 14 to Pennsylvania Rule of Professional Responsibility 1.8. Comment 14 declares that Rule 1.8(h)(1):

> does not . . . prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement.

Pa.R.P.C. 1.8 cmt. 14.

However, in this case, Mackin Medical was "fully informed of the scope and effect of the [arbitration] agreement." To be sure, the arbitration provision in this case: is written in plain, easily understood language; is separately-paragraphed with the bolded title "Dispute Resolution;" is contained in a short, seven-page retainer agreement that is type-written in a

normal font and size; plainly declares that any "dispute, controversy or claim . . . arising out of or relating to . . . this engagement . . . will be submitted to mandatory binding arbitration;" (as explained above) plainly applies to legal malpractice claims; and, sets forth and explains some of the costs and benefits of arbitration. With respect to this last point, the arbitration provision specifically declares:

> The decision of the arbitrator will be final and binding on the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Arbitration has the advantage of generally being faster, less expensive and more informal than traditional litigation and any decision is final and binding. It does not provide, however, for the assurance of as much pre-hearing discovery, public trial by jury, or appeal. Arbitration filing fees are typically more expensive, and the parties are responsible for paying the arbitrator.

Retainer Agreement, Engagement Terms and Policies, at 3.

This arbitration provision fully informed Mackin Medical of the scope and effect of the agreement. Thus, this claim in opposition to Appellant's preliminary objections fails.

Finally, within its response in opposition to Appellant's preliminary objections, Mackin Medical claimed the arbitration provision was invalid and unenforceable because a confidential relationship existed between Mackin Medical and Appellant and there was no evidence that Mackin Medical agreed to the provision "with an understanding and knowledge of its nature, terms and consequences." ***See*** Mackin Medical's Memorandum of Law in Opposition to Appellant's Preliminary Objections, 4/20/18, at 1-17. This claim also fails.

- 17 -

Mackin Medical's claim relies upon ***Paone v. Dean Witter Reynolds, Inc.***, where we held:

> A contract that is the product of a confidential relationship is presumptively voidable unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion. More precisely, the proponent of the contract must prove by clear and convincing evidence that the contract was free, voluntary and an independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences.

***Paone v. Dean Witter Reynolds, Inc.***, 789 A.2d 221, 226 (Pa. Super. 2001) (footnote, quotations, and citations omitted).

Mackin Medical's claim fails because the arbitration provision was contained in the initial retainer agreement between Appellant and Mackin Medical and Mackin Medical did not allege or produce any evidence that a confidential relationship existed between the parties prior to the signing of the agreement. Therefore, at the time the arbitration provision was agreed to, a confidential relationship did not exist between the parties; the provision, thus, was not "**the product of** a confidential relationship." ***See id.*** (emphasis added). Hence, Mackin Medical's claim fails.

In conclusion, since the arbitration provision is enforceable and encompasses the parties' current dispute, we must vacate the trial court's order in this case.

Order vacated. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins.

President Judge Panella files a Dissenting Statement.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/6/2020*